CASE 18—ACTION BY JACOB CULVER'S ADMR. TO SETTLE THE ESTATE OF HIS INTESTATE.—JUNE 20.

# Kelley v. Culver's Admr.

APPEAL FROM NELSON CIRCUIT COURT.

FROM A JUDGMENT SUBJECTING TO CREDITOR'S CLAIMS CERTAIN LANDS SOLD BY THE HEIRS OF DECEDENT TO JOHN S. KELLY. KELLY APPEALS. REVERSED.

ADMINISTRATORS—SUIT TO SETTLE ESTATE—CLAIMS OF CREDITORS—FILING—LACHES—LIS PENDENS—SALE OF LANDS.

Held:  1. Kentucky Statutes (1899), section 2087, provides: "When the heir or devisee shall alien, before suit is brought (on the ancestor's or testator's debt), the estate descended or devised, he shall be liable for the value thereof, with legal interest from the time of alienation, to the creditors of the decedent or testator; but the estate so aliened shall not be liable to the creditors in the hands of a bona fide purchaser for a valuable consideration, unless action is instituted within six months after the estate is devised or descended, to subject same." HELD, not intended to create a lis pendens lien on the lands descended or devised, for the payment of the ancestor's debts, for a longer period than for six months after an action might have been begun to settle the estate and subject the land.

2. Civil Code Practice, section 432, provides: "A creditor appearing before the commissioner (to audit claims) and presenting his claim becomes thereby a party to the action (for settlement of the estate) and is concluded by the final judgment of the court allowing or rejecting his claim." HELD, whether a credi-

Vol. 116—16

tor of the estate filing his claim was made a party to the peti-
tion in the settlement suit, or not, could not affect the validity
of the lis pendens.

3. To obtain the benefits of a lis pendens, the party asserting it
must have not only a suit in which relief in rem is sought
against specific property sufficiently identified by the record, to
which the other claimant or title holder must be a party in
fact, but he must prosecute his suit with reasonable diligence.

4. Where, after the expiration of the six months mentioned in Ken-
tucky Statutes (1899), section 2087, one becomes a purchaser
in good faith and for value, it does not matter how much he
knows about who were the creditors of decedent, as nothing
but a valid lis pendens can then affect the land as a lien.

5. Certain creditors of an estate were, as such, named and joined in
a suit to settle the same by the administrator thereof, and were
thereby, as well as by the advertisement of the commissioner to
whom reference was had to audit claims, called on to file their
claims, if they desired to avail themselves of the benefit of
the action. They failed to file their claims, without excuse or
explanation, till after the commissioner had reported all claims
ascertainable, and till after two judgments of sale of land had
been rendered in the action, and the last sale to pay debts of
decedents and the costs of the suit and of administration had
been confirmed. Two years after they should have set up their
claims, they sought to enforce them against the residue of the
land sold by the heirs to an innocent purchaser for value, after
deducting what was necessary to discharge the known liabilities
of the estate. HELD, that they were guilty of laches precluding
their recovery.

JOHN S. KELLY AND GEORGE S. & JOHN A. FULTON, FOR APPEL-
LANT.

## STATEMENT.

Jacob Culver died intestate in Nelson county, Kentucky, in
April, 1896, owning no personal estate except such as was ex-
empt, and was set apart to his surviving widow; but was the
owner in fee of two adjacent tracts of land, comprising 124
acres, of an inferior quality, and upon one of which tracts he
was resident at the time of his death.

He left surviving him a widow and quite a large family of
adult children, as his sole heirs at law. The intestate owed
very few debts, amounting in the aggregate to $51.25, as shown
by commissioner's report, in excess of a note due his wife,

amounting to $450, including accrued interest, the payment of which was secured by a mortgage on one of the two tracts, in which mortgage she had herself united. Appellee, N. W. Halstead, was duly appointed and qualified as the administrator of the intestate, and within about three months after the intestate's death, to-wit, July 7, 1896, instituted this action in the Nelson Circuit Court making the widow, heirs and alleged creditors, including appellees, Bowling & Greenwell, defendants thereto, and sought a sale of so much of the realty as might be neccessary to pay the mortgage lien and other debts as well as a settlement of his trust.

Upon a reference to the commissioner to audit and report claims, the action progressed until a report was made showing the necessity of a sale of the land, or at least a large part thereof, to pay debts and costs of administration, which were reported in the aggregate on May 29, 1897, at $601.25, including an attorney's fee of one hundred dollars, allowed plaintiff as attorney for himself as administrator, to settle the estate upon which he was administering. Upon a confirmation of this report, a decree of sale was adjudged of a sufficiency of the land to pay said sum and costs. This sale was made by the commissioner on August 9th succeeding (August 9, 1897), at which sale the widow became the purchaser of the entire land. Upon exceptions filed by a part of the heirs to this reported sale, because they were not before the court, the report and sale were set aside, and a re-sale ordered, which was again made by the commissioner on May 9, 1898, being nine months subsequent to the first sale. At this second sale the widow again became the purchaser of sixty acres of the land for the amount neccessary to pay all debts presented, and costs, and producing a surplus of $28, and a homestead exemption for her life as widow was adjudged her in the residue of sixty-four acres, leaving the remainder therein to descend to the children and heirs at law of Jacob Culver.

The second sale was reported and confirmed at the May term, 1898, more than two years after the date of the death of the intestate, and twenty-two months after the institution of the suit to settle the estate, to which suit the appellees, Bowling & Greenwell, as alleged creditors, had been made parties defendant, and brought before the court by process, as alleged in the exceptions, and the plea of the appellant Kelly. On the 5th day of October, 1898, being five months after the second sale, and being two years and three months after the institution of the suit, appellant, John S. Kelly, in good faith and relying upon

all creditors having presented, or been paid, their claims, if any they had, purchased from the heirs at law their remainder interests in the sixty-four acres of land, in which the widow had a homestead exemption right for her life, and at the same time he paid as alleged by him the full value of such remainder interest, viz., $302.50. A deed of conveyance was made him by all said parties for this remainder on the same day, October 5, 1898, and it was immediately placed to registration by him, as shown by the certificate attached to his deed on page 103 of this transcript.

Up to this time Bowling & Greenwell, appellees, had never presented any claim whatever against the estate of decedent and in fact as the record will show, had never even attempted to prepare or verify one until in May, 1898, at which time it now appears from their claim presented, for the first time in November, 1898, that they merely made a statement "of balance on account" and verified the same without ever presenting, or offering to present the same in court or elsewhere, until after appellant Kelly had purchased and paid for this remainder and placed his deed to record in October, 1898.

The master commissioner of the court, long after there had been a final judgment rendered in the cause directing a sale of the lands, and long after the second sale had been made, and his report thereof confirmed, and without there being then any reference of the case before him for further action, volunteers at the November term, 1898, to report this claim of appellees Bowling & Greenwell, and the administrator then seeks to subject this remainder interest which had been acquired by appellant as stated, to the payment of this claim of Bowling & Greenwell so long withheld by them, while the suit was pending, and so done without any excuse, cause or explanation for their delay, except an admission of their own neglect. The record will show they resided within two miles of the decedent's home; that they were apprised of his death by furnishing as they claim, in an itemized account, a coffin of $30, and burial suit $10, charged to have been furnished April 24, 1896. As will be seen by an inspection of their claim, much of it is claimed to have been sold after April 24, 1896, the first items being November, 1896, and then they charge up to the intestate's account $48.48, of an indebtedness incurred and created by a son, Sylvester Culver, for his own use, a large part being the summer and fall of 1896, long after the death of the intestate. (See account on pages 65 and 66 of transcript.)

When the administrator upon the presentation of this account for the first time in 1898 after Kelly's purchase and payment

Kelly v. Culver's Admr.

undertakes to subject this remainder interest to the payment of this claim, appellant Kelly interpleads, setting up his purchase, payment conveyance, registration of his deed, and pleads that this was all done by him in good faith without any information, knowledge or notice that Bowling & Greenwell held any claim, and relies upon the reports of the commissioner, orders and final judgments entered in the cause, and alleges his purchase and payment were made by him in the best of faith.

He then pleads and relies upon the culpable neglect of claimants by their failure to prepare or present any claim as against the claimed *lis pendens* lien, if any ever existed, and also as an estoppel against claimants. The deposition of appellant Kelly is the only testimony taken upon this issue and will be found upon page 96, &c., of the transcript. His testimony supports his plea to the fullest extent. Upon final hearing, as shown by the judgment appealed from, the court overruled the exceptions filed to the claim of Bowling & Greenwell and allowed same as a proper one against the estate of Jacob Culver and then further adjudged that the said tract of sixty-four acres of land in which the widow, Mary Culver, had a homestead right during her natural life, and in which appellant Kelly owned the remainder, is liable to the payment of Bowling & Greenwell's debt as well as the surplus of the $28.50 in court, also purchased by appellant Kelly, and further adjudged a sale of so much of said land as was necessary to pay said claim of Bowling & Greenwell "and the costs of this suit," thereby depriving appellant of his title to said land to that extent, and putting the entire costs of this suit upon him, being a suit to settle the estate in which the costs including attorney's fee is more than $175. The judgment further dismissed the petition of said Kelly, to all of which he excepted and prayed this appeal.

It is the contention of appellant that if the institution of the suit by the administrator within six months after the death of his intestate, seeking a sale of the land to pay debts, &c., created a *lis pendens* lien in favor of the creditors, that such lien or *lis pendens* has been lost to appellees, Bowling & Greenwell by their laches and own culpable negligence when it is sought to be enforced against the appellant as an innocent purchaser for a valuable consideration.

## AUTHORITIES CITED.

Ky. Stats., sec. 2087; Herrman on Estoppel, vol. 1, chap. 1, sec. 5, subsec. 6, p. 4; sec. 7, subsec. 4, p. 6; Watson v. Wilson, 2 Dana, 406-411; Clarkson v. Morgan's Dev., 6 B. Mon., 447-8;

Sugden on Vendors, p. 537; 3d P. Williams, 482; Erhman v. Kendrick, 1 Met., 146-7-8, &c.; Cook v. Clemens, 87 Ky., 570; Smith's Admr. v. Cotton, 63 S. W. R., 473.

NAT. W. HALSTEAD, ATTORNEY FOR APPELLEE.

### STATEMENTS OF PROPOSITIONS DISCUSSED.

1. A *lis pendens* in suit to settle a decedent's estate is created not by filing a commissioner's report of estate and claims, nor by a creditor filing a claim against the estate, but by institution of the suit to settle filed within six months from death of decedent and before alienation by the heirs in the court having jurisdiction of the property and of the parties; the property sought to be subjected being real estate and being property described, and all the parties in interest being duly brought before the court, the heirs at law and creditors in so far as known, all this being done in the case at bar there is a *lis pendens* and the judgment appealed from should have been affirmed. 103 Ky., 403; 91 Ky., 324.

2. The $28 being in the possession of the court by being in the hands of the receiver was within the power of the court and as to it a *lis pendens* manifestly existed and appellant, a stranger to this record, in undertaking to purchase the right to this $28 is clearly a pendente lite purchaser. 91 Ky., 325.

3. The petition set out the existence of the debt now in controversy in the case by name and described the character of the debt, to-wit, funeral expenses, and asked the sale of the real estate to pay that debt, and described accurately the property sought to be subjected being real estate, and having before the court by the execution of process the persons claiming title to the property, then appellant having acquired an interest in the property during the pendency of the suit, acquired such interest as a pendente lite purchaser.

4. A lis pendens is created if the averments of a petition taken in connection with the exhibits are sufficient if enough is alleged to enable a party, upon reasonable enquiry, to identify the property and ascertain the object of the suit. 103 Ky., 403.

5. The legal maxim "that that is certain which may be made certain," applies to the question as to whether property is sufficiently described as to create a lis pendens, the rule is that there is lis pendens whenever there is enough in the proceeding to lead a vigilant mind to identify the property involved and to warn the world that they intermeddle at their own peril. 103 Ky., 403.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

This suit was begun in 1896 by Jacob Culver's adminis-trator to settle his estate. There was not enough personalty to pay the debts of the decedent, and his lands were de-scribed in the petition with the view to selling enough of them to pay the indebtedness. The heirs at law and certain creditors, including appellees Bowling & Greenwell, were made defendants, and had actual notice of the pendency and nature of the suit. A reference was had to the master com-missioner November 14, 1896, to audit the claims against the estate. On the 29th day of May, 1897, the commissioner, who had previously publicly advertised for claimants, filed his report, showing all claims presented. There were no exceptions to this report. The court decreed a sale of enough of the land, after the allotment of a homestead to the widow, to satisfy the claims reported by the commis-sioner. The land was sold in August, 1897, and reported to the court at the following October term. Upon excep-tions filed to the sale by certain of the heirs, it was set aside, as was the former judgment of sale, for a misprision. A resale was adjudged to pay the indebtedness allowed. That judgment was entered March, 1898. The sale was made under it May 9, 1898, and was confirmed, without excep-tion, May 28, 1898. It was not necessary, as developed by this sale, to sell all the decedent's land to pay the indebt-edness presented against the estate. On the 5th day of October, 1898, appellant bought the remainder of the land from the heirs at law, paid them the purchase money—an adequate price therefor—and took their deed of conveyance. On November 11, 1898, a claim for $117.84 was filed in court on this action by Bowling & Greenwell. They sought to have enough of the remaining land—that sold and conveyed to appellant by the heirs October 5, 1898—sold to satisfy their

claim.  Appellant resisted the application on the ground
that he was an innocent purchaser for value, and without
notice of Bowling & Greenwell's claim.  He also pleaded
their silence and delay in presenting their claim against the
estate as an estoppel.  The circuit court subjected the land
to the payment of the claim.  Bowling & Greenwell resided
and did business in the county where the land lay, and in
which the suit was pending.  It is insisted by appellee that
appellant was a *lis pendens* purchaser, and took the title
of the heirs subject to the right of the creditors of their
ancestor to subject his property in this action to pay his
debts.  Section 2087, Kentucky Statutes, 1899, is relied on.
It is:  "When the heir or devisee shall alien, before suit is
brought, the estate descended or devised, he shall be liable
for the value thereof, with legal interest from the time of
alienation to the creditors of the decedent or testator; but
the estate so aliened shall not be liable to the creditors
in the hands of a *bona fide* purchaser for a valuable con-
sideration, unless action is instituted within six months
after the estate is devised or descended, to subject same."
This section was not intended to create a lien upon the
lands descended or devised, for the payment of the ances-
tor's debts, for a longer period than for six months after
an action might have been begun to settle the estate and
subject the land.  It merely held the estate subject to the
decedent's debts until a reasonable time—six months—with-
in which a *lis pendens* lien might be created against it.
As to the validity and effect of the *lis pendens* after it was
begun, the section did not change the common-law rule.
Whether the creditor of the estate was made a party to the
petition in the settlement suit, or not, can not affect the
validity of the *lis pendens,* for the suit was brought for his
benefit, in part, and by statute (section 432, Civ. Code Prac.)

his merely filing his claim therein made him a party. Then the allegations of the petition favorable to his proceeding became adopted as allegations on his behalf. That he was made a party to the petition, in fact, merely brought actual notice to him, earlier than the commissioner's advertisement could, of the pendency and nature of the suit, of its privileges to him, and of the necessity of his availing him-, self of it if he would share in the distribution of its assets, and become entitled to all the other benefits that might flow from the *lis pendens*. His rights and his duties, as well, were those of an actual party to the suit. To obtain the benefits of a *lis pendens,* the party asserting it must have not only a suit in which a relief *in rem* is sought against specific property sufficiently identified by the record, to which the other claimant or title holder must be a party in fact, but he must prosecute his suit with reasonable diligence. Concerning this rule, and the limitations just adverted to, this court, in Clarkson v. Morgan's Devisees, 6 B. Mon., 447, said: "It has ever been regarded as a harsh and rigorous rule in its operation upon the rights of *bona fide* purchasers. The rule was dictated by necessity, as *in*-dispensable to the rights of litigants, and as the means of terminating litigation about the matter in contest. But being a hard rule, and operating with great severity, in many instances, upon the rights of innocent purchasers, it should never be carried, in favor of a complainant asking its enforcement, beyond the purpose and reason of its creation. To entitle him to enforce it against *bona fide* purchasers, he has been held to reasonable diligence in the prosecution of his suit, and should be guilty of no palpable slips for gross irregularities in the management of the same, by which injury may accrue to the rights of others who are not parties." Also, see, Watson v. Wilson, 2 Dana, 406,

26 Am. Dec., 459; Erhman v. Kendrick, 1 Metc., 146; Debell
v. Foxworthy's Heirs, 9 B. Mon., 228. The doctrine as an-
nounced in Clarkson v. Morgan's Devisees, supra, is ap-
proved by the text in Freeman on Judgments, section 208,
and sustained by the authorities there cited. It is founded
in part upon the idea that a stranger to a suit should not
intermeddle with its subject-matter, except upon pain that
he be bound by its conclusion; that he must take notice of
its existence, and to that end he is required, at his peril,
to exercise due diligence in informing himself as to its ex-
istence and nature. It would be an anomalous rule, indeed,
that would require diligence of the innocent stranger, while
condoning the most culpable negligence of the controlling
party to the suit. The doctrine of *lis pendens* does not
depend at all upon, nor is it affected by, the actual knowl-
edge of the stranger as to the purposes of the suit, or the
specific facts to be gathered from its record. He is bound,
if bound at all, by the sufficiency of the record alone. So
that if the suit be permitted to abate, or revivor be not
had for unreasonable length of time (Watson v. Wilson, 2
Dana, 406), or if it is not presented with reasonable dili-
gence, it is the same as if the suit had never been brought,
so far as the doctrine under discussion is concerned.

In the case at bar, the creditors, Bowling & Greenwell,
were named and joined in the suit as creditors, and thereby,
as well as by the advertisement of the commissioner, were
called upon to file their claim as creditors, if they had any,
and desired to avail themselves of the benefit of the action.
They, without excuse or explanation, failed to do so till
after the commissioner had reported all claims ascertain-
able, till after two judgments of sale had been rendered in
the action, till after the last sale to pay the debts of the
decedent and the costs of the suit and of the administration

had been confirmed, and till after the heirs had sold and conveyed to an innocent purchaser for value the residue of the land, after deducting all that was necessary to discharge the known liabilities of the estate; and not till more than two years after they might and should have set up their claim do they attempt to assert it against this land. By their prolonged silence under circumstances ordinarily calculated to produce action, they not unreasonably produced the impression upon any one investigating the record that they were not in fact creditors, or that they elected not to avail themselves of the purposes of the suit. It is equivalent to their having said to intending purchasers from the heirs at law: "I have no claim against this land." For silence may be as potent a disclaimer, under conditions calling for action, as would be a positive declaration. "No one is permitted to keep silent when he should speak, and thereby mislead another to his injury." 2 Herman on Estoppel, p. 1069. The admirably clear text of 1 Herman on Estoppel and *Res Adjudicata,* section 6, thus epitomizes this branch of estoppel: "If a man has led others into the belief of a certain state of facts by conduct of culpable negligence, calculated to have that result, and they have acted on that belief to their prejudice, he shall not be heard afterwards, as against such persons, to show that state of facts did not exist. A man is not permitted to charge the consequences of his own fault on others, and complain of that which he has himself brought about."

It is very earnestly claimed that the allegations of the petition filed by the administrator brought to settle the estate were enough to put appellant upon notice as to the existence of Bowling & Greenwell's claim, as if his knowing of it affected him in the least. The language of the petition that is referred to is this very vague and indefinite

averment:  "The defendant, Mary Culver, holds a mort-
gage on a part of the land hereinafter described, and which
was a debt against said decedent amounting to about $450,
and which is due and unpaid.  And the defendants, Bowling
& Greenwell, and Dr. James Muir and said Mary Culver are
the only creditors of said decedent known to plaintiff."  It
is to be observed that the section of the statute before re-
ferred to (section 2087), affecting purchasers for value
from the heir at law or devisee, does not require that the
purchaser shall have been an "innocent" purchaser, or one
without notice of the ancestor's indebtedness.  It merely
requires that he be a purchaser in good faith and for value.
If, after the six months mentioned, one becomes such pur-
chaser, it does not matter how much he knows about who
were the creditors of the decedent.  The only thing that can
at that time affect the land as a lien is a valid *lis pendens*.

There is no question of fraud involved in this suit.  Upon
the facts recited, we are of the opinion that the pendency
of the action ceased to constitute a *lis pendens* lien upon
the land, by reason of Bowling & Greenwell's negligence in
failing for so long to present their claim, and to prosecute
it with reasonable diligence.

The judgment of the circuit court is reversed, and the
cause is remanded for proceedings not inconsistent herewith.

Whole court sitting.

Petition for rehearing by appellee overruled.