## Goff v. Renick, et al.

(Decided December 19, 1913).

## Appeal from Clark Circuit Court.

1.  Land—Action Under Section 491 Civil Code for Sale of Real
    Estate for Reinvestment—Contingent Remainders—Necessary
    Parties to Action.—In an action, brought under section 491
    Civil Code, to sell for reinvestment real estate devised to one
    for life, and at his death to go to the heirs of his body, but in
    the event the life tenant die without issue, same to go to the
    three brothers of the life tenant, or to the living descendants of
    those who might be dead. Held, That as the life tenant and his
    son and only child, the first remainderman, were living at the
    time of the institution of the action, and were plaintiffs in the
    action, the court had jurisdiction to sell the land; and while
    it was proper to make the life tenants' three brothers, the
    second remaindermen, parties to the action to show their ap-
    proval of the sale and reinvestment, neither they nor their chil-
    dren, the third contingent remaindermen, were necessary part-
    ies.

2.  Wills—Successive Contingent Remainders Under—How Divested
    by Sale and Reinvestment Under Section 491 Civil Code.—While
    the will, under which the title to the land sold for reinvestment
    was devised, created three contingent remainders, it was only
    necessary to bring before the court, in order to obtain a valid
    sale of the land for reinvestment of the proceeds, "the person,
    if in being, in whom it (the title) would have vested if the
    contingency had happened before commencement of the action."
    And as the son of the life tenant was the only person in being,
    in whom the estate would have vested, if the life tenant had
    died before the commencement of the action; and the life tenant
    and his son, together with their wives, were made parties to the
    action, the validity of the sale made of the land cannot be ques-
    tioned by the purchaser.

3.  Land—Sale of for Reinvestment.—Meaning of Section 491 Civil
    Code—Rule as to Representation Recognized by Courts.—It is
    the meaning of Section 491 Civil Code, and a rule recognized
    by the courts, that in an action brought thereunder persons hold-
    ing remote contingent interests in the real estate sought to be
    sold for reinvestment, are not required to be actually brought
    before the court, but will be treated as parties, where the in-
    terests are properly represented by those next before them whose
    several interests combined make up the first estate of inherit-
    ance, if the latter are before the court.

4.  Parties—Effect of Joining All in Interest as Plaintiffs.—It is
    not a valid ground of objection to the judgment or sale that the
    contingent remaindermen were made plaintiffs, instead of de-
    fendants, to the action. Being adults and under no disability,

their voluntarily joining therein as plaintiffs gave consent to what might have been compelled of them as defendants, and served to reduce the cost of the proceedings.

GEORGE C. WEBB, S. M. WILSON and J. F. WINN for appellant.

PENDLETON, BUSH & BUSH for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action was brought, pursuant to section 491, Civil Code, by the life tenant and remaindermen to obtain a decree for the sale of four hundred and ten acres of land in Clark County, described in the petition, and the reinvestment of its proceeds in other real estate. By the judgment rendered, the sale of the land was ordered as prayed in the petition; and it was thereafter sold at public auction, after due advertisement, by the master commissioner to the appellant, Ben. D. Goff, the highest and best bidder, at the price of $170.70 per acre, aggregating about $70,000.00.

Following the filing of the report of sale by the master commissioner, appellant filed numerous exceptions thereto, but, on the hearing of these exceptions, they were overruled by the circuit court, and the sale confirmed. From the judgment entered in pursuance of these rulings, this appeal is prosecuted.

While, in the brief of counsel for appellant, practically all of the exceptions that were filed in the court below to the report of sale are directly or indirectly relied on, we will consider only such of them as have any material bearing on the validity of the sale. It is contended by appellant that there was a fatal defect of parties, in that all persons interested in the property sold were not made parties to the action. Before considering this contention, it will be necessary to determine what persons were interested in the land. The title to the land sold was derived from the will of Abram Renick, deceased, and from the commissioner's deed made pursuant thereto, by which it was conveyed. The clause of the will devising this land is as follows:

"All the land herein given to Abram Renick, Jr., Morris Renick, Bring Renick and Scott Renick I devise to them, each of them during their several natural lives, but after their death or the death of either of them to the heirs of their or his body. If either or any of said devisee should die without issue then living, I hereby devise

said land to the survivor and to the descendants then living of those that may then be dead to be divided equally among those surviving and the representatives of those who may be dead, the descendants of either of said brothers to represent their ancestor.''

The commissioner's deed contains the following clause:

''To have and to hold said property with its appurtenances unto the said grantee (J. Scott Renick) as provided in the will of Abram Renick, deceased.''

The devisees were individually named by the testator, Abram Renick, and the tract of land here involved was that received by J. Scott Renick under the will and deed in question. It is admitted that J. Scott Renick is the holder of the life estate, and that he has only one child, a son, who is of age and married; and further, that J. Scott Renick's brothers, Abram Renick, Jr., Morris Renick and Brink Renick, are all living, and that they are adults, married, and the fathers of children. It will be observed that under the provisions of the will, this land was devised to J. Scott Renick for his natural life and, at his death, it was to go to the heirs of his body, but in the event he died without issue then living, it passed by the terms of the will to his brothers named, Abram Renick, Jr., Morris Renick and Brink Renick, or to the living descendants of those who might be dead, ''to be divided equally among those surviving and the representatives of those that may be dead, the descendants of either of said brothers to represent their ancestors.''

It is apparent, therefore, that when this action was instituted, the life tenant, his son, who would take at his death, and his three brothers who were to take in the event the life tenant died without leaving issue then living, were all in being, of age and free from disability.

Obviously, several contingent remainders are created by the will; the first taker being the son of the life tenant, viz.: H. Phelps Renick, provided he outlived his father. But, if he is surveyed by his father, then the next remainder is to the three living brothers, Abram Renick, Jr., Morris Renick and Brink Renick; and the last remainder is in favor of the children or descendants, of these three brothers, who would take if, at the time of the death of the life tenant, J. Scott Renick, his son, and the three brothers were all dead. The action was instituted by J. Scott Renick, Princess Renick, his

wife, Harry Phelps Renick, his son, Abram Renick, B. M. Renick and Morris W. Renick, his brothers, all being plaintiffs. Section 491, of the Civil Code, under which the action was brought, provides: "In an equitable action by the owner of a particular estate of freehold in possession, or by his guardian or committee if he be an infant or of unsound mind, against the owner of the reversion or remainder, though he be an infant or of unsound mind, and against the owner of the particular estate if he be an infant or of unsound mind; or, if the remainder be contingent, against the person, if in being, in whom it would have vested if the contingency had happened before commencement of the action, though he be an infant or of unsound mind, and against the owner of the particular estate though he be an infant or of unsound mind—real property may be sold for reinvestment of the proceeds in other real estate."

Counsel for appellant insist that the children of Abram Renick, Jr., Morris Renick and Brink Renick were necessary parties to this action, and that the sale of the land by the commissioner was invalid and should be set aside, because they were not brought before the court. We regard this contention unsound, for under the section, *supra,* as these remainders were contingent and go in successive order, it was only necessary to bring before the court, in order to obtain a valid sale of the property for reinvestment of the proceeds, "the person, if in being, in whom it (the title) would have vested if the contingency had happened before commencement of the action." The son of the life tenant was the only person in being, in whom this estate would have vested, if his father, the life tenant, had died before commencement of the action. In other words, there is only one contingency, under the terms of the will, on the happening of which, the estate is to vest in the remainderman, and that is the death of the life tenant. When J. Scott Renick dies, the estate cannot go to all the remaindermen named in the will, but only to the remainderman first in order, who is in being at that time. Therefore, if the son of the life tenant is living, he takes, and the others do not, thus making in the father and son, if that contingency happens, an entire and complete estate, which is the first estate; but if, before the death of J. Scott Renick, his son should die, and there were no other children of either J. Scott Renick or of his son,

that would open up another contingency, by which the brothers of J. Scott Renick would take to the exclusion of all others. The estate that would fall to them, in that event, together with the estate held by the life tenant, would necessarily constitute an entire and complete estate in fee, which would be the second estate. But there is further a third and last contingency, dependent upon the second, as the second is dependent upon the first, each subordinate to the other, the last arising in the event of the death of the son of the life tenant and the three brothers, before the happening of the contingency, viz.: the death of the life tenant, in which case the children of the three brothers, or of such of the three brothers as may die, should take as representing their ancestor; that is, their father's part, and in this condition, we have again an entire estate in fee, made up of the life estate and these remainders in the event they should take, which would make the third estate. But, after all, the vesting of the estate is actually determined by the happening of the one contingency, that is, the death of the life tenant.

If our construction of section 491, of the Civil Code, correctly interprets its meaning, the brothers of the life tenant, Abram Renick, Morris Renick and Brink Renick, were not necessary parties to the action, though doubtless made so as a matter of precaution on the part of the life tenant and to show their approval of the sale of the land.

The construction here given the section of the Code, *supra*, as well as the application made of its meaning, has repeatedly been sanctioned by this court. Luttrell v. Wells, &c., 97 Ky., 84, was an equitable action under this section, for the sale of real estate, in which there were remainder interests, for reinvestment of the proceeds in other real property. The property sought to be sold consisted of a farm in Mason County, the title to which was derived under certain provisions of the will of Richard Wells, which devised to his son, William, the rents and profits of the farm during his life and at his death, if his wife survived him, she was to have the use and profits of the land until their youngest child arrived at the age of twenty-one years, upon the happening of which event, the farm was directed to be sold and the proceeds divided between the widow and children of. William, she to take a child's part. The will further. provided that, should William survive his wife, then, at

his death, the farm should be sold and the proceeds divided between his children and their heirs; the heir of a child to take the share of the deceased parent, should one or more of the children be dead when the land was sold, and the proceeds divided according to the provisions of the will. William Y. Wells, his wife, and their six adult children, with the husbands of their daughters who had married, and the two infant children of Wells and his wife were made parties to the action. The purchaser of the property at the decretal sale excepted to the confirmation of the sale, upon the theory that, as some of the children of William Y. Wells, the life tenant, might die before he did, in which event the share of the one dying would, under the terms of the will, pass to his heirs, probably meaning children, and as it cannot for that reason be told who might be entitled to take in remainder under the will, the purchaser could not get a perfect title under the decretal sale. In overruling this exception, the court said:

"It is sufficient to say that section 491, of the Code, was designed to meet such cases and that although the remainder may be contingent, yet, if the person in being in whom the remainder interest would have vested, if the contingency had happened before the commencement of the action, be properly before the court, as seems to have been the case here, a complete and perfect title may be passed under a proceeding conforming to the provision of that section and the subsequent sections of the Code regulating such proceedings."

It is not to be overlooked that proceedings under this section of the Code are merely for the purpose of changing the investment, and the sale cannot be made unless it is established by proof to the satisfaction of the chancellor that it will inure to the benefit of those owning an interest in the property; and it goes without saying, that a reinvestment in real estate, which will benefit the life tenant and the first taker in remainder, must also benefit the second taker in remainder, and also the third as well. Therefore, on the question of benefits, all the contingent remaindermen must, and will, be affected alike, where the sale is for reinvestment in like property. In all cases the court must pass upon that question before sale is ordered. So, it is to be presumed that the more remote contingent remaindermen will be as much benefited by the sale as the remaindermen standing next in order ahead of them.

In this connection, it is well to notice that section 498, of the Code, which authorizes the sale of trust estates, with remainders, for reinvestment, provides that where lands are held in trust by one for the life of another, with remainder over to a class of persons, or to any person not ascertained or to be ascertained until the death of the life tenant, or where the life tenant has the power to dispose of the estate by will or an instrument in the nature of a will, it is provided that such estates may be sold in an action "to which all persons having a present or vested interest in such lands are parties." And this is followed by the further provision in the section that any deed or mortgage so made under order of court "shall be held and construed to have the same effect as if executed by every person having a vested or contingent interest in and ownership of said land, and as if executed by all persons and classes who would take under the limitations or provisions of said deed, or as devisees under the exercise of such power to devise or appoint, and as if every claimant, present or future, under such deed or power, was under no disability whatever."

It is also to be noted that contingent remainders may be sold under this section of the Code without making the contingent remaindermen parties. For only those who have a present or vested interest are required to be made parties, notwithstanding which, the contingent remaindermen are concluded by the judgment of sale. While it is true that this section contemplates the existence of a trustee, acting in a representative capacity, its provisions are nevertheless consistent with the recognized doctrine that parties may be made by representation as well as by actual service of process; those acting in a representative capacity as to others who succeed them in interest, being held to protect the subsequent interest.

It is, therefore, a rule, recognized by the courts, that persons holding remote contingent interests are not required to be actually brought before the court, but will be treated as parties, where the interests are properly represented by those next before them, if the latter are before the court. Fritsch v. Klausing, 11 Rep., 788, is a case in which the above rule was applied. A satisfactory statement of the rule is given in Herman v. Parsons, 117 Ky., 239. With respect to a ruling of the circuit court that certain grand children of a testator owning a con-

tingent remainder interest in the real estate in litigation, should have been made parties to a previous action in which it was sold, and that, as they had not been made parties they still retained their interest, we said: "We are of the opinion that the lower court erred. These appellees, under this will, merely held contingent remainder interests. Their grandmother held the life estate and their father the fee, subject to be defeated by his death before his mother's death. The general rule is that it is sufficient to bring before the court the persons whose several interests combined make up the first estate of inheritance. As these appellees' grandmother and their father were parties to that action, and they owned together the first estate under the will at that time, it was unnecessary to have made appellees parties, as they were only contingent remaindermen, and were bound by representation. See Calvert on Parties, p. 251; Freeman on Judgments, Sec. 172. The reason for this rule is stated in Faulkner v. Davis, 18 Grat., 798, 98 Am. Dec., 698, where the court said, 'This rule of representation often applies to living persons who are allowed to be made parties by representation for reasons of convenience and justice, because their interests will be sufficiently defended by others who are personally parties, and who have motives both of self-interest and affection to make such defense, and they, therefore, consider it unnecessary to make such persons parties, and indeed, improper to do so, and thus compel them to litigate about an interest which may never vest in them.' Their father, who held the first estate subject to the life estate of his mother, was a party. He had a motive of self-interest and affection to cause him to make defense."

Although the opinion calls attention to the fact, that there are cases in which a distinction has been made between one who is in privity with the estate and one who is a stranger to the instrument by which the contingent remainder has been created, yet the rule as to representation was conceded to have been properly applied in the case of Fritsch v. Klausing, *supra,* and in that case Mrs. Evans, who instituted the action, was not a stranger to the instrument creating the estate, but her relation thereto, like that of the appellees in the instant case, was that of a privy. In 23 Cyc., 1245; Herman v. Parsons is, among other cases, cited as sustaining the following statement of the doctrine under consideration:

"Persons having a remote, contingent or expectant interest in realty are bound by the judgment rendered in an action concerning the property, although not made parties to the suit, if the holder of the first estate of inheritance is a party, as he represents them. And estates limited over to persons not *in esse* are represented by the living owner of the first estate of inheritance, so that a decree in a suit to which the first holder, a living person, is made a party, will conclude the rights of after-born remaindermen."

In the more recent case of Walsh v. Parr's Exor., 110 S. W., 300 (not elsewhere reported) the rule of being bound by representation was again applied, although the land was sold under section 490, Civil Code. The opinion also refers to Fritsch v. Klausing, shows its applicability to the case in hand, and concludes its reference to it as follows: "In that case, the interests of the contingent remaindermen were secured by a reinvestment of the proceeds in the sale of their property upon the same terms and conditions as specified in the deed. In the case at bar, the contingent remaindermen's interests are protected in the same manner and they have no interest in the property in litigation."

It is apparent from the opinions in Hermann v. Parsons and Walsh v. Parr's Exor., that the rule was recognized as applying, whether the sale is procured by a stranger to the instrument creating the estate, or by one or more of those holding under it.

In the more recent case of McClure v. Crume, 141 Ky., 361, the rule in question was again applied as to unborn contingent remainderman; it being, in substance held, that section 491, Civil Code, was enacted to protect their interest in the real estate sought to be sold for reinvestment, by representation through the contingent remaindermen in being, made parties to the action. In this case the proceeds of the real estate sold, were allowed to be reinvested in similar property in another State.

Tested by the provisions of section 491, Civil Code, and the foregoing authorities, it is manifest that all the necessary parties in interest were before the court when the judgment of sale was rendered. It is equally manifest from the record that the sale of the land and reinvestment of its proceeds as adjudged will be to the benefit of all the parties in interest, and that, in making the reinvestment, the court will require the real estate to be

conveyed to the parties in interest in the same manner and under the same limitations as the land sold was devised them by the will of Abram Renick.

We find no merit in appellant's contention that the remaindermen, brothers of the life tenant, should have been made defendants to the action. If it would have been proper to adjudge the sale and reinvestment prayed, by making the remaindermen in question defendants; being adults, their voluntary act in making themselves plaintiffs to the action and joining in the prayer for the relief asked, could have no other than the same legal effect, and served to reduce the cost of the proceedings. Besides, we have in numerous cases recognized the right of the parties in interest to so conduct the proceedings: Howard, &c. v. Singleton, &c., 94 Ky., 336; Shelby, &c. v. Harrison, &c., 84 Ky. 148.

The only other material contention of appellant, is the complaint raised by one of the exceptions that the evidence as to the necessity for the sale of the land was permitted by the court to be made in the form of affidavits. This objection from the purchaser of the land is not tenable. In an ex parte proceeding, proof is often made by affidavits. There are in this case no infants or other persons under legal disability. The Civil Code, sections 540-547, allows, in certain cases, the taking of proof by affidavit, and where, as in this case, the parties in interest are all plaintiffs, and the object to be attained by the action is for the benefit of all, it will be presumed, in the absence from the record of a contrary showing, that the taking of proof by affidavit, was consented to by all the parties.

There is no error in the judgment appealed from, wherefore it is affirmed.

Whole court sitting.