## Whittaker v. Chenault, Sr., et al.

(Decided June 17, 1921.)

## Appeal from Montgomery Circuit Court.

1. Judicial Sales—Parties.—Under section 491 of the Civil Code only the owner of the particular estate and the contingent remainder-men in whom title would have vested if the contingency had happened before commencement of the action are required to be made parties to an action for sale of the land for reinvestment, and such remaindermen who are adults may join as plaintiffs in such action.

2. Descent and Distribution—Estates.—Where certain lands were devised to testator's son for life with remainder to the latter's children, but to others if the testator or his estate should be required to pay an indebtedness of the son upon which the testator was surety, the interests devised to the son and his descendents were not divested to others where after testator's death some of his other devisees joined with the son in conveying a portion of the land devised to him to a stranger and with the proceeds paid the son's indebtedness, even though the payment was made through the named executors but who in so doing were acting as individuals and not as executors.

3. Descent and Distribution—Payments.—The named executors are held to have been acting as individuals for the son and not as executors for the estate in making such payments where the power to act as they did was denied them by the will and the evidence shows they were acting for the son.

4. Judicial Sales—Equity.—A purchaser by deed from the life tenant and the first set of successive contingent remaindermen of a portion of the land so devised would have no equity in another portion of said land which was sold herein for reinvestment under section 491 of the Code if later he should be divested of title by the happening of a contingency that would destroy every interest his grantors ever had in the whole tract.

5. Judicial Sales—Setting Aside.—The mere fact an executed deed in the chain of title to land sold in a judicial proceeding is not of record is not ground for setting the sale aside upon exception of the purchaser.

6. Judgment—Clerical Misprision.—A judgment rendered before an action stood for trial under the Code is a clerical misprision and upon motion may be corrected by the trial court at any time. Sections 517 and 518, Civil Code of Practice.

7. Judicial Sales—Equity—Burden of Proof.—The burden is upon the purchaser of proving alleged outstanding equities or defects in the title of land purchased by him at judicial sale.

8. Lis Pendens—Due Prosecution.—Due prosecution is a fundamental part of the lis pendens doctrine.

9.   Execution—Levy Under—Limitation of Actions.—In the absence of a showing to the contrary it will be conclusively presumed after eleven years that a proceeding to enforce an execution levy has been abandoned or concluded.

10.   Lis Pendens—Sale—Setting Aside.—Proof of a lis pendens on execution levy eleven years previous to a judicial sale of land for reinvestment under 491 of the Code furnishes no grounds for setting the sale aside upon exception by the purchaser.

ROBERT H. WINN and R. G. KERN for appellant.

W. B. WHITE and E. W. SENFF for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Anderson Chenault disposed of a large estate by will, devising 160 acres of land to his son W. O. Chenault for life with contingent remainder to the latter's children and their descendants if any such survived the life tenant but subject to the further provision that if the testator or his estate should be required to pay a certain note for the life tenant upon which the testator was surety, then a defined portion of the west end of the 160 acres should not pass to W. O. Chenault and his descendants in the manner above described but should go to three named daughters of the testator for life with remainder to their children.

In this *ex parte* action instituted pursuant to section 491 of the Code by W. O. Chenault and his children, four sons, and their wives all of whom were adults, for the sale for reinvestment of 99 1/3 acres of the 160 acres, the sale was ordered and U. S. Whittaker became the purchaser. He filed exceptions to the report of sale which were overruled and the sale confirmed and he appeals.

The first question raised is one of practice and involves a construction of section 491 of the Code under which the action was prosecuted. It is contended that in all proceedings under this section it is necessary that the suit be brought *by* the life tenant *against* the contingent remaindermen and that such remaindermen, even though adults may not be plaintiffs. By the Code provision only the remaindermen "in whom title would have vested if the contingency had happened before commencement of the action" are required to be made parties. Hence only W. O. Chenault, the life tenant, and his four sons were necessary parties to this action and the question for decision is whether the latter being adults could join as plaintiffs or must have been sued as defendants.

In Goff v. Renick, 156 Ky. 588, 161 S. W. 983, just as here the life tenant and contingent remaindermen joined as plaintiffs in an action brought pursuant to this same section of the Code for the sale of land for reinvestment and the sale was upheld, which could not have been done if the contention now made with reference to this section of the Code were sound. It is insisted, however, by counsel for appellant that this question was not there presented or considered by the court. It is only true however that the question was not discussed with reference to the first set of contingent remaindermen who only of several successive sets of remaindermen were necessary parties to the action, but it was presented and was discussed with reference to the second remaindermen who were proper but not necessary parties thereto; and with reference to the contention that they could not be plaintiffs but must be defendants in an action under this provision of the Code the court said:

"We find no merit in appellant's contention that the remaindermen, brothers of the life tenant, should have been made defendants to the action. If it would have been proper to adjudge the sale and reinvestment prayed, by making the remaindermen in question defendants, their voluntary act in making themselves plaintiffs to the action and joining in the prayer for the relief asked could have no other than the same legal effect and served to reduce the cost of the proceedings."

This reasoning not only applies with equal force to the first remaindermen but the judgment of necessity would have been reversed instead of affirmed unless it had been so applied. This opinion must therefore be accepted as construing section 491 of the Code to mean that the contingent remaindermen required to be made parties to an action thereunder who were adults, could join with the life tenant as plaintiffs if they so desired.

It is also true this court in McClure v. Crume, 141 Ky. 361, 132 S. W. 433, said with reference to this section of the Code that the "person in being who has a contingent interest in the property is required to be joined as the defendant in the proceeding in order that not only his own interest may be protected by his own watchfulness and judgment but by their exercise the interest of the unborn contingent remaindermen, identical in its character, may also be protected." But in that case the contingent remainderman was made a defendant and the question as to whether or not he could join as plaintiff

was not presented. Besides the purposes there stated for his being a defendant are as fully conserved by his being a plaintiff and there is nothing in that case, in its reasoning or questions decided, conflicting in the least with the reasoning and conclusions of the court in the Renick case.

The case of Wyatt's Trustee v. Grider, 158 Ky. 440, 165 S. W. 420, cited by counsel has no application to the case at bar, since that proceeding was under section 489 of the Civil Code which refers to the sale only of vested estates in lands of infants or incompetents and is without analogy even with reference to contingent estates of adults involved here. So also with the case of Hartman v. Fast, 145 Ky. 402, 140 S. W. 549, cited by appellant, which considers and discusses only sections 489 and 490 of the Civil Code with reference to infants when they are necessary parties and are required by the Code to be made defendants. We are therefore of the opinion that appellant's first contention is without force.

2.   Appellee's second, third and fourth exceptions to the report of sale rest finally upon a single contention, namely, that 41 5/6 acres of the 99 1/3 acres sold herein did not pass under the will to W. O. Chenault and his descendants, but passed to the three daughters of testator for life with remainder to their descendants because of the alleged failure of W. O. Chenault to pay the note upon which the testator was surety and the consequent payment thereof by his executors.

The will provides:

"If at the end of two years from the date of my death he (W. O. Chenault) has not paid all such surety debts aforesaid for which my estate shall be bound, then enough shall be taken off said west side of said 160 acres as will be equal at $60.50 per acre, to the amount my estate may be bound *and* have to pay for him."

By another clause of the will it is provided that a devise of adjoining lands to the testator's three daughters Molly, Maggie and Lucy for life with remainder to their descendants shall "embrace any part of the 160 acres devised to my son William O. for life that may be taken off it in consequence of my or my estate *having to pay* any debts for which I am now or may be surety for him at the time of my death."

It will be noticed that while William O. Chenault is given by the will but two years in which to pay any indebtedness upon which the testator was surety, and he

did not pay a note for some $3,000 upon which the testator was surety within that time, it is clear that the will does not divert any part of the 160 acre tract from W. O. Chenault and his descendants to the three daughters and their descendants except as a consequence "of my or my estate *having to pay* any debts for him" as stated in the one clause and as stated in the other, "to the amount my estate may be bound *and have to pay for him.*"

Manifestly therefore the whole of the 160 acre tract passed to W. O. Chenault and his descendants unless the testator or his estate had to pay an indebtedness for him and the devise to him was not defeated by a mere liability beyond the two years period but only by an actual payment of such indebtedness by testator's estate.

It is contended by the appellant that the testator's estate was required to and did pay this note for some $3,000 upon which testator was surety for W. O. Chenault, but this is not true. The will expressly provides that the executors could not sell any of the land for any debt of the testator but that they should rent out all of the land devised to all of his children until a sufficient sum was derived therefrom to pay any indebtedness of the estate in excess of what was realized from his personalty. More than two years after the death of the testator, W. O. Chenault and his brothers and sisters and their consorts executed a deed and attempted to convey to Mrs. E. D. Marshall 52½ acres of the 160 acre tract devised to W. O. Chenault, and his descendants; and the executors, two sons and a son-in-law of testator, in signing the deed annexed to their signature the words " individually and as executors," but they were not as executors named as grantors anywhere in the deed. Mrs. Marshall paid the purchase price to the executors and same was used by them to satisfy the note of W. O. Chenault upon which testator was surety, as appears from the *ex parte* settlement of the executors made before the county judge.

It is upon these facts that appellant bases the contention that this 52½ acres, of which 41 5/6 acres is included in the 99 1/3 acres purchased by appellant at the decretal sale, passed to the three daughters and not to W. O. Chenault. This however is not true, because plainly this was not a sale of the land or a payment of W. O. Chenault's indebtedness by or for the estate of the testator. It cannot possibly be held that the two sons and a son-in-law of testator, who happened to be his executors, were acting in the conveyance of the land to Mrs. Marshall and

the payment of the note as executors or 'for the estate, since they had no such power under the will and did not even hold themselves out as grantors in the deed to Mrs. Marshall. Clearly therefore they were acting simply as individuals and not as executors in this transaction as is stated by W. O. Chenault in his testimony.

That Mrs. Marshall did not get clear title by this conveyance or that W. O. Chenault thereby raised the money with which to pay his note cannot possibly affect the question under consideration in any 'way, since by the terms of the will the whole of the 160 acres passed to W. O. Chenault and his descendants unless the estate of the testator was required to and did pay an indebtedness for him and this the estate did not do. Nor is it of consequence that W. O. Chenault verified a petition in another action which contained a statement that the 52½ acre tract sold to Mrs. Marshall was deducted from the 160 acre tract as provided in the will, since as we have seen it was not done pursuant to the will but in violation of the express provisions thereof, and this statement is competent as evidence only as affecting the testimony of W. O. Chenault herein that the sale to Mrs. Marshall and the payment of his note was made by himself, his brothers and sisters and their consorts acting as individuals and for him and not the estate, which is necessarily true since it could not have been done as it was done by the executors or under the will.

3. It is next contended that one Frank Lockridge has an equity in this 41 5/6 acres for recoupment in case he should be divested of 50 acres off the east end of the 160 acre tract not involved herein, which was sold to him by W. O. Chenault and his sons and the purchase price used by them to repurchase the 52½ acres sold to Mrs. Marshall.

This contention is clearly lacking in merit because the only contingency that can divest Lockridge of his title to the 50 acres of land conveyed to him will also destroy every vestage of interest that any of his grantors ever had in the 41 5/6 acre tract sold to exceptor herein. Lockridge having a good deed as against W. O. Chenault and his children can be divested of the 50 acres conveyed to him by them only in the event that W. O. Chenault outlives all of his children, which is a possible but remote contingency. But even if he should be divested by this remote contingency, his grantors will also be divested by the same contingency of all their interest in the 41 5/6

acre tract and he cannot possibly have any equity therein, which would necessarily be deducible only through his grantors and could not be asserted against the then takers who had not conveyed to him. But even if this were not true, any possible equity possessed by him being in his money rather than any piece of land in which it may temporarily find lodgment would follow the funds which the court must invest in other lands, and cannot be exerted to annul the Code provisions for reinvestment of the land for the benefit of all possible takers thereof as their interests however they may arise shall ultimately be made to appear.

4. It is next contended that appellant will not get a merchantable title to an undivided 2/3 interest in 16 acres of the 99 1/3 acres he is purchasing because a deed from Gatewood and Bogie to W. O. Chenault therefor is lost and that the action instituted to supply this lost instrument is void because prematurely submitted.

After Mrs. Marshall purchased this 52 1/2 acres of land she conveyed same to one Anderson Chenault, Jr., who in turn conveyed 36 1/2 acres of same to W. O. Chenault and 16 acres thereof to Samuel, Waller and Charles Chenault. Waller conveyed an undivided 1/3 interest in the 16 acres to W. O. Chenault, and Samuel and Charles conveyed an undivided 2/3 interest in same to Gatewood and Bogie. W. O. Chenault thereafter conveyed the 36 1/2 acres and the 1/3 of the 16 acres he had repurchased to himself for life with remainder over upon the same terms and conditions same was devised by Anderson Chenault. These deeds are of record, but there is no deed of record from Gatewood and Bogie for the interest conveyed to them by Samuel and Charles Chenault. It is not contended, however, by appellant that Gatewood and Bogie did not reconvey same to W. O. Chenault and those to whom it was devised by Anderson Chenault, which they did, as is clearly established by the evidence herein, but only that the deed therefor has been lost and is not of record. It is conceded however by the appellant that equitable proceedings instituted by appellees against Gatewood and the heirs of Bogie to supply this lost deed and under which it has been supplied are regular in all respects except that the action was submitted for judgment prematurely. If this were true, which we do not concede, it is but a clerical misprision, (section 517 of the Code) and upon motion may be corrected by the court at

any time, (section 518 of the Code). Hence the chancellor did not err in overruling this exception.

5. The last contention is that at the time of the sale there was an execution lien upon the undivided contingent interest of Walter Chenault in the 41 5/6 acres and that appellant's exception to the sale based thereon was erroneously overruled. To sustain this contention it is only shown that pursuant to section 2358a of the statutes one G. W. Anderson by attorney on January 6, 1910, filed an *ex parte* statement in the county clerk's office stating that an execution was issued against Waller Chenault and levied upon his interest in this land on December 27, 1909. This is certainly no evidence that such or any lien exists against the land at this late day nor is it competent evidence that such an execution was issued or was levied or that such a lien ever existed in fact. It is simply a *lis pendens* notice authorized by the statute and therefore constructive notice of whatever the facts were and are, but proof only that the party filing it was asserting a lien upon an undivided contingent interest in the land in 1910 or more than eleven years previous to the sale herein.

Without stopping to consider whether or not an execution *lis pendens,* involving only an undivided contingent interest would follow and be effective against the proceeds as claimed by appellees or the land as claimed by appellant upon a sale of land for reinvestment by the court under the Code for the benefit and protection of all parties concerned, it is clear that such a proceeding could not be effective as a *lis pendens* for any purpose unless and only so long as it was duly prosecuted since due prosecution is a fundamental part of the entire *lis pendens* doctrine. Kelly v. Culver, 116 Ky. 241, 75 S. W. 272; Ehrman v. Kendrick, 1 Metc. 146; Gossam v. Donaldson, 18 B. Mon. 230; Clarkson v. Morgan, 6 B. Mon. 441; Watson v. Watson, 2 Dana 406; Woodward v. Johnson, 90 S. W. 1076; Roberts v. Cardwell, 154 Ky. 483, 157 S. W. 771; Annotated Cas. 1915 C. 515 and note; 25 Cyc. 1470; 17 R. C. L. 1037; Bouvier vol. 2, page 266.

We have judicial knowledge of the comparatively short time required for the due prosecution of an execution levy and in the absence of a showing to the contrary it must be conclusively presumed after eleven years that such a *lis* had been abandoned or concluded. The burden is upon the purchaser at a judicial sale of proving alleged outstanding equities or other defects in the title of the land sold, which are not disclosed by the record in the

case (Graves Committee v. Lyons, 166 Ky. 446, 179 S. W. 413) and mere proof of the existence of a proceeding to enforce an execution against a contingent interest in a portion of the land eleven years previous to a judicial sale especially of land for reinvestment under section 491 of the Code cannot be accepted as proof of a defective title or as grounds for setting aside the sale at the instance of the purchaser.

We have not deemed it necessary to consider the alleged insufficiency of the deed from W. O. Chenault, etc., to Mrs. E. D. Marshall to convey good title to the 52 1/2 acres, since whatever interests she acquired in the 41 5/6 acres involved here were certainly reconveyed, as is shown above, to W. O. Chenault and his descendants under the same terms and conditions as same were devised to them by Anderson Chenault, before this sale was made.

Wherefore the judgment is affirmed.