## Security Trust Co. v. Mahoney et al.

June 4, 1948.

Harbison, Kessinger, Lisle & Bush for appellant.

Alvin E. Evans, McDonald & McDonald for appellees.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

This appeal deals with that portion of the John B.

Gorham estate in which Elizabeth Clark Wood Mahoney was designated as the immediate beneficiary.

Under the 5th clause of John B. Gorham's will he devised two farms, one in Scott County and one in Fayette County, to the Security Trust Company as trustee. An undivided ½ interest therein was to be held in trust for the benefit of John W. Marr; and an undivided ¼ interest each to appellees, W. C. H. Wood, Jr., and Elizabeth Clark Wood Mahoney, for and during their natural life. The will further provided, as touching the interest of Elizabeth Clark Wood Mahoney, that upon her death her interest was to pass to her issue in fee, but if she left no issue surviving, then to be held for the benefit of her brother, W. C. H. Wood, Jr., for and during his life with remainder to his issue, and the interest of W. C. H. Wood, Jr., was to pass on his death to his issue in fee and in default of issue to Mrs. Mahoney and her issue. Should both Mrs. Mahoney and W. C. H. Wood, Jr., die without leaving issue surviving them, their interest should pass to John W. Marr and his issue.

In Clause 5 of the will it was provided:

"Neither my said Trustee nor any of the above named beneficiaries during their lives shall have the power to sell, mortgage or encumber the trust property or to anticipate the income."

In 1944 suit was instituted in the Fayette Circuit Court seeking a decree of sale of the 552 acre farm in Fayette and Bourbon Counties. The chancellor decreed a sale by the master commissioner at public auction, the proceeds of the sale to be held by the commissioner subject to further orders of the court for purposes of reinvestment under the terms of the will of John B. Gorham. Exceptions were filed, which upon being overruled, an appeal was prosecuted to this Court. The judgment of the chancellor decreeing the sale was affirmed in Kelly v. Marr, 299 Ky. 447, 185 S. W. 2d 945.

After the payment of expenses of the sale the master commissioner reported to the Fayette Circuit Court a balance of $108,450.43 in his hands for reinvestment. Thereupon, the chancellor entered an order directing the balance be invested in 2½% U. S. Government

664

Bonds, ½ thereof to be delivered to the Security Trust Company to be held by it as trustee for John W. Marr, subject to the conditions set out in the will; ¼ to be held for W. C. H. Wood, Jr. under the terms of the will; and provided further:

"3. Out of one-fourth (¼) thereof, towit: $27,112.-61, said Commissioner is ordered and directed to purchase said U. S. 2½% coupon bonds in the sum of $27,-000.00 at par, and to deliver said bonds, when purchased, to the Security Trust Company, to be held by it as Trustee for Elizabeth Clark Wood Mahoney, and the net income thereon shall be paid to said Elizabeth Clark Wood Mahoney, for and during her natural life, and at her death the principal of said fund shall be paid by said Trustee in equal portions to the surviving issue of said Elizabeth Clark Wood Mahoney, per stirpes, and in the event she should die leaving no issue surviving her, then the net income on said property shall be paid to William C. H. Wood, Jr., for and during his natural life and at his death the principal shall be paid to his issue, per stirpes, and in the event he die without issue, the net income on said property shall be paid to John W. Marr, for and during his natural life, in case he survives, or if he should be dead, said property shall pass to his issue, per stirpes, in fee simple.

"The balance, which the Commissioner is unable to put in said bonds, towit: $112.61, shall be paid to said Trustee for Elizabeth Clark Wood Mahoney, to be accounted for as principal, and said sum shall be invested by said Trustee in U. S. Saving Bonds, Series G, to the extent possible.

"Said bonds shall be held by said Trustee subject to the orders of this Court, with the right to change said investment at any time, if the Court so orders."

Thereafter, the master commissioner reported the investment as ordered.

In 1947, appellee, Elizabeth Clark Wood Mahoney, filed action for the advice and instruction of the court with reference to the investment of the fund held for her during her lifetime by the Trust Company. In her petition she sets out the sum of $27,000 was invested in

2½% bonds; and that in addition to that fund the Trust Company also held $10,000 invested in Government Bonds under the order of the Scott Circuit Court, which was money obtained from the land sold in Scott County, and which sale was affirmed by this court in Adams et al. v. Security Trust Company et al., 302 Ky. 287, 194 S. W. 2d 521. She alleged that the interest rate on the Government Bonds was only 2½% per annum and that there were other safe, sound, and marketable securities which could be purchased and which would yield a much larger average return than the 2½%. The securities listed were: J. C. Penney Company Common, American Telephone and Telegraph Company Common, Chesapeake and Ohio Railway Company Common, Corn Products Refining Company Common, E. I. duPont De-Nemours & Company Common, General Motors Corporation Common, R. J. Reynolds Tobacco Company Class B. Common, and Standard Oil of New Jersey Common. The above securities would yield an estimated 5.27%.

W. C. H. Wood, Jr., individually, and as guardian of his minor children, who under the will above were the immediate remaindermen after the life tenancy of Elizabeth Clark Wood Mahoney, filed answer and prayed that his interest and that of his minor wards receive the protection of the court.

The Security Trust Company also filed its answer and prayed the advice and direction of the court.

Oral proof was heard. Appellee introduced as witnesses Baylor Landrum, Alex P. Herrington and S. A. Wallace, each of whom testified that the stocks set out above were well regarded; were good investments for funds; had good dividend records; and were the type of securities in which prudent businessmen would invest, and that they were what was termed by investors as "blue chip" securities.

The court delivered an opinion in which he decided that the present life tenant was entitled to have the trust funds invested in such a manner as would give her a reasonable income therefrom, provided the corpus of the estate would be reasonably safe, and in view of the fact Elizabeth Clark Wood Mahoney does not have, and probably will not have any children, that the trustee

should be permitted to invest not exceeding 75% of the Government Bonds in his hands in other securities, which should apply only to the $27,000 in Government Bonds which the trustee held under the order of the Fayette Circuit Court and not to the $10,000 Bonds which came from the Scott Circuit Court. He said in his opinion:

"In view of the fact that this trust fund is the proceeds of the sale of real estate which the testator who created the trust, provided should not be sold, but which the Court allowed to be sold because it was unprofitable, the Court has grave doubts if any of the trust funds should be invested in common stocks. The funds should perhaps be held in government bonds until they can be reinvested in land.

"The trustee should appeal this case so that the appellate court may say if the Court's judgment herein is proper,—that is, if this much or more of the funds may be or should be invested in common stock."

From this judgment the trustee prosecutes this appeal. Elizabeth Clark Wood Mahoney, excepting to that portion of the judgment permitting only 75% of the investment, and also refusal to treat the funds held under the orders of the two different circuit courts as one fund, files her cross-appeal.

Appellant quite frankly admits that if the Trust Company held these funds in its hands for investment without any limiting provisions the investment in the common stock, as set out in the petition of Elizabeth Clark Wood Mahoney and listed in the judgment appealed from, would be proper. But it is insisted that we do not have here the usual and ordinary case of the investment of trust funds, since in the instrument creating the trust it was provided that the trust property should not be sold, mortgaged, or encumbered by the trustee or any of the named beneficiaries during their lives; that even though particular conditions existed which necessitated the sale of the real estate, such sale ipso facto did not deprive the trust property of its character as real estate and authorize its investment in common stocks; and that where such real estate is sold for reinvestment it is usually contemplated that the proceeds will be ultimately reinvested in other real

estate. It is further urged that this view is established since in the appeal of the cases above, affirming the judgment of sale, the opinions indicated that it was the thought of this Court that the proceeds would ultimately be reinvested in real estate.

Appellant further contends that since the original action in Kelly v. Marr was brought pursuant to Section 489 of the Civil Code of Practice, the reinvestment should be pursuant to Section 494, which provides:

"4. Investment of Proceeds. In the actions for investment authorized by section 489 the court shall order the proceeds of sales to be invested, subject to its approval, in real estate in or out of this State, or in bonds of the United States or of this State, or in the stock of a bank of this State, subject to the same uses, trusts and limitations as the estate sold was subject to."

At first blush this might appear to be controlling. It is true in Kelly v. Marr, attorneys briefed the case as if it had been brought under Section 489. But there is nothing in the pleadings that restricts it so as to require it to come under Section 489. Even though that were the theory of the briefs it would not necessarily change the application of the statute. The Adams case was brought pursuant to the provisions of the Acts of 1882, p. 90.

Appellees take the position that the original action in Kelly v. Marr must be assigned to Section 491 rather than Section 489, since interest of only those persons under disability can be sold under 489, and where that interest is a remainder, it must be a vested one. It is insisted that this position is made the more plausible since in the present case the interests of the infants are clearly contingent. We think appellees are obviously right in the position taken. If that position then is correct, Section 494, directing the character of the reinvestment of the proceeds of the lands of infants, is not applicable. If, then, the land was sold under Section 491, the proceeds may be invested in other real property, or other property authorized by law. The applicable portion of the Section reads in part:

"The Court * * * shall * * * retain the custody and

control of the fund * * * until the same is reinvested in real estate, or in such other property as the funds of persons under disability may be invested in authority of law.''

If the above quoted section applies, then the prudent businessmen investment rule applies. This rule is found in KRS 386.020(h):

''Any fiduciary holding funds for loan or investment may invest them in: * * * (h) Real estate mortgage notes, bonds and other interest-bearing or dividend-paying securities which would be regarded by prudent businessmen as safe investments.''

It must be noted that we are here actually dealing with a change in the investment. The sale of the land has already been approved. The investment of the proceeds of that sale in Government Bonds has been confirmed. Consequently, we are not dealing with land but with the sale of the bonds and reinvestment in common stock. At the time of the investment in Government Bonds the lower court decreed: ''Said bonds shall be held by said trustee subject to the orders of this Court with the right to change the investment at any time if the Court so orders.'' Obviously, such a change of invesment now would in no way preclude a subsequent reinvestment in land when and if such a reinvestment should be deemed a prudent one.

In the early period of trusts it appears that the prevailing thought, with reference to the trustee's duty, was simply the preservation of the trust for the benefit of remaindermen. A trustee's duty, where there are present beneficiaries of income and successive interest, has been a subject of much controversy and has produced divergent judicial opinions. However, it seems to be a well settled principle that a trustee, in administering an estate for present beneficiaries of income and for remaindermen, is bound as much to secure the usual rate of income upon sale investments for the present beneficiary of income as to preserve the corpus for the benefit of the remaindermen. The creator of the trust obviously had two objects in view; first, the payment of the income to the life tenant, and, second, the preservation of the corpus for the remaindermen. Certainly, the preservation of the corpus is an essential element

of the trust, and any depletion thereof tends to frustrate the creator's purpose. Likewise, failure to invest in income producing investments, thereby defeating the benefits to the life tenant, would also tend to frustrate the settlor's purpose. It, therefore, follows that a trustee is charged with the duty to invest so as to produce income, and at the same time use a sound discretion in regard to the preservation of the corpus. In other words, where there are successive beneficiaries the trustee is under duty to deal impartially with them.

In Restatement of the Law, Trusts, Section 232, it is stated thus:

"If by the terms of a trust the trustee is directed to pay the income to a beneficiary during a designated period and on the expiration of the period to pay the principal to another beneficiary, the trustee is under a duty to the former beneficiary to take care not merely to preserve the trust property but to make it productive so that a reasonable income will be available for him, and he is under a duty to the latter beneficiary to take care to preserve the trust property for him."

So, it follows that each beneficiary, and not one of them, has a right to expect a performance of the trust.

Again in Restatement of the Law, Trusts, Section 240, it is said:

"Unless it is otherwise provided by the terms of the trust, if property held in trust to pay the income to a beneficiary for a designated period and thereafter to pay the principal to another beneficiary produces no income or an income substantially less than the current rate of return on trust investments, and is likely to continue unproductive or under-productive, the trustee is under a duty to the beneficiary entitled to the income to sell such property within a reasonable time."

In order then impartially to discharge this dual duty, it is proper to invoke the aid of the prudent man investment doctrine, which has been adopted in this State by statute and decision. KRS 386.020(h); Citizens' National Bank v. Jefferson, 88 Ky. 651, 11 S. W. 767; and Fidelity & Columbia Trust Company v. Meek, 294 Ky. 122, 171 S. W. 2d 41.

With the above principles in mind the court below directed a sale of $20,000 of Government Bonds, the proceeds to be reinvested in the diversified stocks as listed above, and $7,000 to be left in Government Bonds for market contingencies. We think the chancellor did not abuse his discretion in so doing.

Appellant raised the question as to whether or not John W. Marr and his children should have been made parties to this action. They are parties in the original action for the sale of the land. The cause remained on the docket for the purpose of reinvestment. It will be noted from the facts heretofore set out that Marr and his children are only alternate contingent remaindermen, and that Wood and his children are the immediate remaindermen. Obviously, protection of the interests of the immediate remaindermen would likewise protect the interests of the alternate contingent remaindermen. We have held that in an action by the life tenant for the sale of real estate for reinvestment, only those contingent remaindermen in whom title would vest if the contingency had happened before the action was commenced need be joined. Goff v. Renick, 156 Ky. 588, 161 S. W. 983; Willis v. Lapsley, 240 Ky. 829, 43 S. W. 2d 47; and Ward v. Kemper's Adm'r, 240 Ky. 808, 43 S. W. 2d 50. This being true, it obviously follows that these remote contingent remaindermen would not be necessary parties then in an action for an order for a change in investment.

This leads us then to a consideration of the cross-appeal. It is insisted, first, that the proceeds from the sale from the lands involved in the two suits above mentioned, should be treated as a unit, that is to say, the $10,000 controlled by the Scott Circuit Court and the $27,000 under the control of the Fayette Circuit Court, and placed in the hands of the trustee in Fayette County, is and should be treated by the trustee as one fund held by it. It is insisted that by treatment of the fund as a unit the trustee should be permitted to sell the entire $27,000 in control of the Fayette Circuit Court and reinvest the entire amount in the diversified stocks, and hold the $10,000 unconverted Scott County funds as a sufficient reserve for market contingencies. The court properly took the view that it did not control the Scott

County funds and dealt alone with the funds directly under its control. This we think was proper.

While the testimony offered shows the proposed investment to be reasonably safe and in accordance with the prudent businessman rule, yet it is noticeable that that evidence also shows that there should be a reserve sufficient for market contingencies. This must have been somewhat persuasive since the court directed that only 75% of the amount invested in Government Bonds be sold and reinvested in the common stocks, and reserved the 25% for future market contingencies. This, we think the court in its sound discretion had a right to do, and properly did.

Wherefore, the judgment is affirmed on both the direct and cross-appeals.