**UNITED STATES of America,**
Appellant,

v.

Lucy Thomas POWELL, Nellie Louise Powell and Elmer E. Fox, as Co-Executors under the will and of the Estate of Leonidas Hudson Powell, deceased, Appellees.

No. 6920.

United States Court of Appeals Tenth Circuit.

July 13, 1962.

William Jay Howard, Atty., Dept. of Justice, (Louis F. Oberdorfer, Asst. Atty. Gen., Dept. of Justice, Lee A. Jackson and I. Henry Kutz, Attys., Dept. of Justice, Newell A. George, U. S. Atty., and Robert M. Green, Asst. U. S. Atty., were with him on the brief) for the United States of America.

John F. Eberhardt, Wichita, Kan. (George B. Powers, Carl T. Smith, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris and Gerald Sawatzky, Wichita, Kan., were with him on the brief) for appellees.

Before PHILLIPS, PICKETT and LEWIS, Circuit Judges.

PHILLIPS, Circuit Judge.

Lucy Thomas Powell, Nellie Louise Powell and Elmer E. Fox, coexecutors of the estate of Leonidas Hudson Powell, deceased, brought this action against the United States to recover federal estate taxes paid by them on the Powell estate. The action was tried to the court without a jury and judgment was entered in favor of the taxpayers in the sum of $55,762.46. The United States has appealed.

On June 4, 1932, Leonidas Hudson Powell created an irrevocable living trust. The trust instrument designated Powell and the Fourth National Bank in Wichita as cotrustees. Under it, Powell's wife is the life tenant and his two daughters are the remaindermen. The income of the trust is payable to the wife at her request, but if not so requested, it is added to the principal. On the death of the wife, the residue of the trust is to be divided into equal shares for the benefit of the two daughters, or their surviving issue, per stirpes. Upon reaching the ages of 37, 47, 52, 57 and 62, each daughter is to receive a one-fifth portion of her share of the trust corpus. The trust also makes provision for alternative dispositions in the event of the death of the daughters without issue prior to final distribution.

Powell died on May 16, 1954. An estate tax return was filed which did not include the assets of the trust in the gross estate. The Commissioner of Internal Revenue assessed a deficiency predicated upon the inclusion of such trust assets in the gross estate, which was paid under protest by the taxpayers. A claim for refund was duly filed, which was disallowed by the Commissioner. The instant action was then commenced.

The trust instrument provides, in part, as follows:

"Second: * * *

"During the lifetime of the grantor and while he is acting as a Joint-Trustee hereunder the said Trustees are expressly authorized and empowered to sell, contract for sale, mortgage, pledge, hypothecate, or otherwise deal with the assets comprising this trust estate, and to invest, or re-invest the said trust property or any part thereof in such securities or other property, real or personal, as in the discretion of said Trustee may be deemed most advisable for the benefit of the trust estate herein created, including the right to purchase life insurance, annuity contracts or income bearing contracts issued by legal reserve life insurance companies authorized to do business in the State of Kansas.

"Upon the death of the grantor or upon his incapacity to act, or resignation as Joint-Trustee hereunder, thereafter the Trustees shall invest or re-invest only in high grade municipal, Government, or other bonds, or any loans secured by first mortgages on farm lands or improved City real estate located in a productive part of the country, such mortgage loans not to exceed forty per cent (40%) of the fair market value of such real estate as in the discretion of the Trustees shall be deemed most advisable in order to assure a reasonably safe investment, and to produce satisfactory income, the protection of the principal however to be more important than securing higher rate of income.

\* \* \* \* \* \*

"The Trustees of this estate shall not be held responsible for any loss resulting to this trust estate by reason of retaining any previous investments made by the said Trustees while the grantor is acting as one of the Trustees hereunder.

"Fifth: If, at any time during the continuance of this trust, it is necessary or advisable to use *some portion of the principal for the maintenance, welfare, comfort or happiness of the Grantor's wife,* \* \* \* *or Grantor's daughters,* \* \* \* or for the education of Grantor's said daughters, the Trustee is hereby authorized and empowered to use so much of the principal as in the discretion of the Trustee is necessary or advisable to be used to meet such conditions, and *provided that the Trustee shall deem that the purpose for which the payments are to be made, justifies the reduction in the principal of the trust properties.* \* \* \* " (Emphasis added.)

The trust instrument contained no exculpatory clause, other than that quoted above.

At the time of the creation of the trust, June 4, 1932, the corpus had a value of approximately $60,000. Mr. Powell's income for each of the years of 1931 and 1932, before taxes, was approximately $100,000 and his net worth in 1932 was $502,628. Mrs. Powell's net worth in 1932 was $59,452. In the period between the creation of the trust and Powell's death, Mrs. Powell withdrew $32,000 of trust income and left the balance of such income in the trust. At the death of Powell, the accumulated and reinvested trust income totalled approximately $210,000 and the value of the trust corpus was approximately $170,000. From time to time during his life Powell made gifts to his wife and daughters from his personal assets, totalling over $200,000.

The taxpayers called five witnesses, who testified that during his life Powell was an extremely conservative, frugal and thrifty person. In 1940 Powell hired his son-in-law to work in his grain elevator business at a salary of $100 per month. At this time such son-in-law had no outside income and was required to support his family on this amount. Such salary had been raised to $400 per month when the son-in-law left the business in 1945 or 1946.

Powell was 63 years old when he created the trust. He actively engaged in the grain elevator business until 1944, at which time he sold his business and retired. Until a few years before his death, he remained vigorous and actively managed his investments.

In its findings of fact the court, in part, found:

"10. \* \* \* in all of his business, personal, and family affairs Mr. Powell was an extremely conservative, frugal and thrifty person to whom the thought of making distributions to his wife or daughters from the corpus of the June 4, 1932, living trust for the purpose of administering to their subjective pleasures or 'happiness'—as distinguished from distributions necessary to maintain them according to the conservative standard of living to which they had been accustomed—would have been repugnant. \* \* \*

"11. \* \* \* that \* \* \* paragraph Fifth of the \* \* \* living trust was intended by the settlor, \* \* \*, to mean only that distributions might be made to his wife and two daughters from the corpus of the trust if, but only if, such use of the corpus were required to maintain them in the conservative mode of living to which they had been accustomed during his lifetime, and that as used by Mr. Powell the word 'happiness' in the phrase 'maintenance, welfare, comfort or happiness' was intended to and must be equated with basic maintenance and welfare, not with 'pleasure' or subjective 'delight.' "

Section 811 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 811, in part provides:

"§ 811. *Gross estate*

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, * * *.

\* \* \* \* \* \*

"(d) *Revocable transfers*

\* \* \* \* \* \*

"(2) *Transfers on or prior to June 22, 1936.* To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, * * *."

The court concluded that the investment powers and the power to invade the corpus did not reserve to the settlor power to "alter, amend, revoke, or terminate" the trust within the meaning of § 811(d) (2) of the Internal Revenue Code of 1939 and that the deficiency was improperly determined.

The contentions of counsel for the United States are:

1. The decedent's power to invest in life insurance or annuities constituted power to alter or amend the corpus of the trust, within the meaning of § 811(d) (2);

2. The decedent's power to invade the trust corpus for the benefit of his family's "happiness" constituted a power to alter and amend the trust, within the meaning of § 811(d) (2); and

3. The powers retained, if not sufficiently broad individually, were sufficiently extensive cumulatively to require inclusion of the trust corpus in the gross estate.

I

*The Investment Powers*

It will be observed that the trustees were to exercise their power of investment, including the power to purchase life insurance, annuity contracts, or income bearing contracts in a manner deemed by them in the exercise of their discretion to be for the benefit of the trust estate. It will be further observed that the trust instrument gave the settlor no direct power to alter or amend the corpus of the trust or the trust instrument, itself, and if it did give the settlor power to affect beneficial interests, it did so indirectly, as a secondary consequence of the exercise of administrative investment powers. It should be noted, also, that there were no provisions in the trust instrument manifesting an intent to give the trustees broad powers of investment without limitation or restraint, to exculpate them from improper exercise of those powers, to authorize them to act individually, rather than as fiduciaries, in the exercise of such powers, or to prevent a court of equity from reviewing their exercise of such powers and correcting any abuses of discretion.

The trust instrument was executed and was to be carried out in the State of Kansas, for the benefit of persons who were citizens and residents of that state. It was governed, therefore, by Kansas law.

It is well settled, under the law of Kansas, that a court of equity has power to review the exercise of discretionary powers conferred upon trustees and to correct any abuse in the exercise of such discretion. The Supreme Court of Kansas so held in Keeler v. Lauer, 73 Kan. 388, 85 P. 541, 543, with respect to a trust instrument which gave large discretionary powers to the trustee. It reiterated that doctrine in In re Porter's Estate, 164 Kan. 92, 187 P.2d 520, 525, in which the court said: "Notwithstanding the powers and discretion given to the trustee he is subject to the direction and control of a court of equity, which will have full power to prevent mismanagement of the estate and to correct any abuses of the trust." Counsel for the

United States assert that the investment power, with respect to life insurance, annuities and income bearing contracts, authorized the trustees to invest the corpus so as to deprive the life tenant, the wife, of all income and of all benefits of the trust and, conversely, to invest the corpus in annuities for the term of the wife's life and thereby deprive the remaindermen, the daughters, of all benefits of the trust.

In our opinion, the instrument gave the trustees no such unbridled discretionary power or authority. It is well settled that where there are two or more beneficiaries of a trust, it is the duty of the trustee to administer the trust impartially, as between the beneficiaries,[1] and where a trustee under a trust is directed to pay the income to a beneficiary during his life and on his death to pay the income from the trust or the corpus to another beneficiary, it is the duty of the trustee so to administer the trust as to preserve a fair balance between them.[2]

Accordingly, it was the duty of the trustees in the exercise of their discretion to invest the corpus for the benefit of the trust estate and in such a manner as to preserve a fair balance between the life tenant and the remainder beneficiaries. That constituted an ascertainable, external and judicially established standard, enforceable by courts of equity in the exercise of their powers to review the action of trustees in administering trusts. We have no doubt that the courts of Kansas, in the event the trustees under the instant trust so exercised their investment powers partially as between the life tenant and the remainder beneficiaries and so as not to preserve a fair balance between them, would hold that

the trustees had abused their discretion and were subject to judicial review and control.

Counsel for the United States rely heavily on State Street Trust Company v. United States, 1 Cir., 263 F.2d 635. That case was predicated upon § 811(c)(1)(B) of the Internal Revenue Code of 1939. It involved three spendthrift trusts, established in 1925. The trusts gave to the trustees these extraordinarily broad powers:

"* * * to retain and invest and reinvest in securities or properties although of a kind or in an amount which ordinarily would not be considered suitable for a trust investment, including, but without restriction, investments that yield a high rate of income or no income at all and wasting investments, intending hereby to authorize the Trustees to act in such manner as it is believed by them to be for the best interests of the Trust Fund, regarding it as a whole, even though particular investments might not otherwise be proper; * * * to determine what shall be charged or credited to income and what to principal notwithstanding any determination by the courts and specifically, but without limitation, to make such determination in regard to stock and cash dividends, rights, and all other receipts in respect of the ownership of stock and to decide whether or not to make deductions from income for depreciation, amortization or waste and in what amount; * * * and generally to do all things in relation to the Trust Fund which I, the Donor, could do if living and the Trust had not been executed."

---

1. See Scott on Trusts, 2nd Ed., Vol. II, § 183; Redfield v. Critchley, 252 App. Div. 568, 300 N.Y.S. 305, 310, affirmed, 277 N.Y. 366, 14 N.E.2d 377; Restatement of the Law of Trusts, § 183.

2. Pennsylvania Co., Etc. v. Gillmore, 137 N.J.Eq. 51, 43 A.2d 667, 670, 671; Security Trust Co. v. Mahoney, 307 Ky. 661, 212 S.W.2d 115, 119; In re Simpson's Will, Sur., 33 N.Y.S.2d 614, 616; Restatement of the Law of Trusts, § 232; Scott on Trusts, 2nd Ed., Vol. III, § 232, p. 1744.

Each contained the following exculpatory clause:

"All such acts and decisions made by the Trustees in good faith shall be conclusive on all parties at interest and my Trustees shall be liable only for their own wilful acts or defaults, but in no case for acts in error of judgment."

In holding that the trust came within the provisions of § 811(c), the court said:

"Perhaps no single power conferred by the decedent on the trustees would be enough to warrant inclusion of the corpora of the trusts in his estate. But we believe that the powers conferred on the trustees, considered as a whole, are so broad and all inclusive that within any limits a Massachusetts court of equity could rationally impose, the trustees, within the scope of their discretionary powers, could very substantially shift the economic benefits of the trusts between the life tenants and the remaindermen. We therefore conclude that under the trusts the decedent as long as he lived, in substance and effect and in a very real sense, * * * 'retained for his life * * * the right * * to designate the persons who shall possess or enjoy the property or the income therefrom; * * *'"

The case, in our opinion, is clearly distinguishable on the facts. In that case, the First Circuit held that the powers of the trustees were so broad and all inclusive that they were not within any limitation the Massachusetts court of equity could rationally impose.

In contrast with the broad powers given the trustees in the State Street Trust case, it should be noted that the trust instrument in the instant case did not give the trustees any power to exchange trust property for other property, to invest and reinvest "without restriction" in speculative securities yielding a high rate of income, in "no income" producing securities, or in wasting assets, or to allocate receipts, including stock dividends and stock rights, as between principal and income, nor "generally to do all things in relation to the Trust Fund," which the settlor "could do if living and the Trust had not been executed," and in the instant case, the trust instrument did not, as in the State Street Trust case, undertake to exculpate the trustees from liability, other than for wilful acts or defaults.

■ We conclude the investment power given to the trustees by the trust instrument was subject to and limited by a judicially established and judicially enforceable external and ascertainable standard and, hence, was no more than a management or administrative power, and that in exercising it the settlor acted in a fiduciary capacity, as trustee, and not individually.[3]

It follows that the granting of the investment power did not give the settlor power to alter and amend the corpus of the trust, within the meaning of § 811 (d) (2), supra.

## II

### *The Power to Invade the Corpus*

The trust instrument gave the trustees power to invade the corpus, if they deemed it necessary or advisable to provide for "the maintenance, welfare, comfort or happiness of the Grantor's wife, * * * or Grantor's daughters, * *." There is nothing in the context in which the term "happiness" is found, or in the instrument as a whole, that indicates an intent that it should be given a broader connotation than its usual and ordinary meaning. Rather, the contrary is indicated by the qualifying language that resort to principal should not be made, unless the need "justifies the reduction in the" corpus.

The usual and ordinary meaning of "happiness" is "a state of well-being characterized by relative permanence." Webster's New International Dictionary, Second Ed., Unabridged, p. 1136. It is synonymous with "comfort" or "welfare." Macmillan's Modern Dictionary,

---

3. Cf. Estate of Willard P. King, 37 T.C. 973 (decided February 21, 1962).

Rev.Ed.1944; Webster's New International Dictionary, Second Ed., Unabridged, p. 2900. It is "That more permanent enjoyment of life which attends on, and is almost identical with, welfare." 39 C.J.S. Happiness p. 773. Webster's New Collegiate Dictionary, 11th Ed., 1959, p. 375, defines "happy" as "enjoying well-being, peace, and comfort."

Webster's New International Dictionary, Second Ed., Unabridged, p. 2900, defines "welfare" as "state or condition in regard to well-being; esp., condition of health, happiness, prosperity, or the like." In its ordinary sense "happiness" has the characteristic of permanence or endurance, as distinguished from pleasure, which is transitory. Funk & Wagnall's Synonyms, Antonyms and Prepositions, Rev.Ed.1947, delineates the objective qualities of "happiness," as contrasted with "pleasure," as follows:

"Happiness is * * * more serene and rational than pleasure; pleasure is of necessity transient; happiness is abiding; thus, we speak of pleasures, but the plural of happiness is scarcely used. Happiness, in the full sense, is mental or spiritual or both, and is viewed as resulting from some worthy gratification or satisfaction; we can speak of vicious pleasure or delight, but not of vicious happiness * * *."

There are many adjudicated cases holding that the terms "happiness," "welfare," and "comfort" are synonymous.[4]

It is true that the United States Supreme Court in Merchants Nat. Bank of Boston v. Commissioner, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35, construed the word "happiness," as used in the trust there involved, as having a broader meaning than "welfare" and "comfort." In that case the will authorized the trustee to invade the corpus:

" * * * at such time or times as my said Trustee shall in its sole discretion deem wise and proper for the comfort, support, maintenance, and/or happiness of my said wife, and it is my wish and will that in the exercise of its discretion with reference to such payments from the principal of the trust fund to my said wife, * * * my said Trustee shall exercise its discretion with liberality to my said wife, and consider her welfare, comfort and happiness prior to claims of residuary beneficiaries under this trust."

It is clear, we think, that the court accorded such broader connotation to the word "happiness," because of the context in which it was found and, particularly, the instructions to the trustee to exercise its discretion with liberality to the wife and to consider her welfare, comfort and happiness prior to the claims of the residuary beneficiaries.

In the opinion the court said:

" * * * Introducing the element of the widow's happiness and instructing the trustee to exercise its discretion with liberality to make her wishes prior to the claims of residuary beneficiaries brought into the calculation elements of speculation too large to be overcome, * * *."[5]

**4.** National Surety Co. v. Jarrett, 95 W.Va. 420, 121 S.E. 291, 295, 36 A.L.R. 1171; Combs v. Carey's Trustee, Ky., 287 S.W. 2d 443; Industrial Trust Co. v. Commissioner of Int. Rev., 1 Cir., 151 F.2d 592, 594, 169 A.L.R. 144, c. d. 327 U.S. 788, 66 S.Ct. 807, 90 L.Ed. 1014; Estate of Albert E. Nettleton, 4 T.C. 987, 993; Gannert v. Rupert, 2 Cir., 127 F. 962, 963; Wiseman v. Tanner, D.C.Wash., 221 F. 694, 698, reversed on other grounds, 244 U.S. 590, 37 S.Ct. 662, 61 L.Ed. 1336; In re Buell's Estate, 198 Misc. 358, 66 N.Y.S.2d 180, 185; English v. English,

32 N.J.Eq. 738, 750, 751; 39 C.J.S. Happiness p. 773.

**5.** The interpretation we have placed on the opinion in the Merchants Bank case finds support in the following adjudicated cases:
Commissioner of Int. Rev. v. Wells Fargo B. & U. Tr. Co., 9 Cir., 145 F. 2d 130, 132; Blodget v. Delaney, 1 Cir., 201 F.2d 589, 592; Lincoln Rochester Tr. Co. v. Commissioner of Int. R., 2 Cir., 181 F.2d 424, 425; Lincoln Rochester Trust Company v. McGowan, 2 Cir., 217 F.2d 287, 291.

Here, the trust instrument not only did not provide that the power to invade the corpus should be exercised with liberality and to gratify the wishes of the beneficiaries, but, on the contrary, indicated that the power should be exercised with restraint and only when the purpose justified a reduction of the corpus. Of course, the exercise of discretion to invade the corpus with liberality and in accordance with the wishes of a beneficiary is not a power restricted by a fixed standard. Likewise, Henslee v. Union Planters Bank, 335 U.S. 595, 69 S. Ct. 290, 93 L.Ed. 259, is distinguishable from the instant case. There, the will authorized and empowered the trustees to invade or wholly utilize the corpus for the life tenant's (the mother of the decedent) "pleasure, comfort and welfare" and stated that "The first object to be accomplished * * * is to take care of and provide for my mother in such manner as she may desire" and directed the trustees to manage the estate "primarily for this purpose."

We are of the opinion that the word "happiness," in the sense it is used in the trust instrument, is synonymous with "welfare" and "comfort."

It is well settled that the words "welfare" and "comfort" provide an ascertainable and judicially enforceable external standard.[6]

We conclude that the provisions in the trust instrument giving the trustees power to use the corpus "for the maintenance, welfare, comfort or happiness" of the beneficiaries and for the "education" of the daughters, the remaindermen, "provided * * * the purpose for which the payments are to be made, justifies the reduction in" the corpus, established an ascertainable, external and judicially enforceable standard and that the trustees, in exercising such power, were limited by such standard and the supervision and control of the courts of Kansas in the exercise of their equity powers.

Hence, the authority given the trustees to invade the corpus did not give to the settlor power to alter or amend the trust, within the meaning of § 811(d) (2).

### III

### *The Cumulative Effect of Such Powers*

In view of the conclusion we have reached, with respect to the investment

---

6. In the following cases the quoted language was held to provide an ascertainable, external and judicially enforceable standard:

Ithaca Trust Co. v. United States, 279 U.S. 151, 154, 49 S.Ct. 291, 73 L. Ed. 647, "from the principal any sum 'that may be necessary to suitably maintain her in as much comfort as she now enjoys'"; Hartford-Connecticut Trust Co. v. Eaton, 2 Cir., 36 F.2d 710, "to pay over to * * * my said wife (the life tenant) any part of the principal * * * which it (the trustee) may deem necessary or advisable for her comfortable maintenance and support"; Berry v. Kuhl, 7 Cir., 174 F.2d 565, 566, payment from principal to life tenant for "treatment, support or maintenance"; Lincoln Rochester Trust Co. v. Commissioner of Int. R., 2 Cir., 181 F.2d 424, 425, 427, to advance to the life tenant "such sums of principal as may be necessary for her proper care, support and maintenance"; Blodget v. Delaney, 1 Cir., 201 F.2d 589, 591, to pay to the life tenant "from the principal any amount in their discretion for her comfort and welfare"; Jennings v. Smith, 2 Cir., 161 F.2d 74, 75, 76, to use net income "to enable the beneficiary * * * to maintain himself and his family * * * in comfort and in accordance with the station in life to which he belongs"; Blunt v. Kelly, 3 Cir., 131 F.2d 632, to use such portion of the principal as the trustees may deem proper "for the support, care or benefit of" the settlor; Estate of Walter E. Frew, 8 T.C. 1240, 1241, 1244, 1245, power of the trustees "in their sole discretion, if at any time * * * the net income payable to any beneficiary shall, in their opinion, be insufficient for the proper maintenance and support of said beneficiary, apply to such purposes so much of the respective part of the principal from which said income is derived as they may deem proper"; Estate of Horace G. Wetherill, 4 T.C. 678, 679, 681–684, invasion of corpus for "care, maintenance and support" of life tenant, Petition to Review dismissed 150 F.2d 1019; Estate of Lucius H. Elmer, 6 T.C. 944, invasion of corpus for "comfortable support" of life tenant.

power and the power to invade the corpus, it is our opinion that their combined or cumulative effect would not bring the trust within § 811(d) (2). Here, the whole is no greater than the sum of its parts.

The judgment is affirmed.