Coralie Berryman FORSEE, Barbara Berryman Wray, Jean Berryman Jamison, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 98–2562–JWL.

United States District Court, D. Kansas.

Nov. 8, 1999.

---

Frederick K. Starrett, Steven J. Brady, Lathrop & Gage L.C., Overland Park, KS, for Plaintiffs.

Martin M. Shoemaker, Office of Special Litigation Tax Div., Washington, DC, for Defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

In this case the court is called upon to determine whether the deceased received a general power of appointment under the Dorothy Berryman Revocable Trust such that the corpus of the trust was properly included in the decedent's gross estate for tax purposes as required by 26 U.S.C. § 2041. Presently before the court is plaintiffs' motion for summary judgement (Doc. 11). For the reasons set forth below, plaintiffs' motion is denied and summary judgment is granted in favor of the government.

## I.  Findings of Fact

The parties stipulate to and the court finds the following facts. On or about April 2, 1987, C. Price Berryman and Dorothy Berryman, husband and wife, executed the Dorothy Berryman Revocable Trust. Mrs. Berryman was the settlor and both she and Mr. Berryman were the initial trustees. The provisions of the trust required that the trust property be held and invested and that Mrs. Berryman receive the trust income for her life. After Mrs. Berryman's death, the trust income was to be paid to Mr. Berryman for his life. After Mr. Berrryman's death, the trust property was to be distributed to the Berrymans' three children, plaintiffs in this action. The trust further provided that after the death of Mrs. Berryman, "The TRUSTEE shall pay to my husband from time to time such amounts of the principal of The Marital Trust as the TRUSTEE may in its discretion deem advisable for his happiness, health, support, and maintenance."

Mrs. Berryman died in May of 1989, at which time Mr. Berryman (hereinafter "Decedent") became the sole trustee until his death on February 28, 1993. After reviewing Decedent's federal estate tax return, the Internal Revenue Service ("IRS") determined that the corpus of the trust should be included in Decedent's gross estate because, according to the IRS, Decedent held a general power of appointment in the trust. As a result of the IRS determination, the personal representative of Decedent's estate paid the IRS $169,945.11 in taxes based on the corpus of the trust. Subsequently, plaintiffs filed a claim for refund, which the IRS denied, and a written protest of the denial, which the IRS also denied. As a result, plaintiffs initiated this refund suit alleging that the IRS erroneously determined that Decedent held a general power of appointment in the trust, and that the Estate overpaid its federal estate tax in the amount of $169,945.11.

## II.  Legal Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1). Furthermore, the court may enter summary judgment sua sponte "when the following conditions are met: (1) there is no dispute of material fact; (2) the losing party has had an adequate opportunity to address the issues involved." *David v. City & County of Denver,* 101 F.3d 1344, 1359 (10th Cir.1996), citing *Celotex,* 477 U.S. at 326, 106 S.Ct. 2548. The parties

have agreed to the stipulated facts set forth above; there is no genuine issue of material fact. Additionally, the parties have fully briefed the issues involved in this case. Therefore, the court will enter summary judgment if it finds that a party is entitled to it as a matter of law.[1]

The statute governing the taxation of Decedent's gross estate is 26 U.S.C. § 2041. Under 26 U.S.C. § 2041(a)(2), a decedent has a general power of appointment includable in his estate if at the time of his death he possessed a power over assets "which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate." 26 U.S.C. § 2041(b)(1). However, this section contains an exception whereby a "power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment." 26 U.S.C. § 2041(b)(1)(A). The Treasury Regulation interpreting this exception states that a power is limited by an ascertainable standard if "the extent of the holder's duty to exercise and not to exercise the power is reasonably measurable in terms of his needs for health, education, or support.... A power to use property for the comfort, welfare, or happiness of the holder of the power is not limited by the requisite standard." 26 C.F.R. § 20.2041-1(c)(2).

Finally, the court recognizes that state law must be used to determine the extent of Decedent's powers created by the trust. The Supreme Court has said: "State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed." *Morgan v. Commissioner of Internal Revenue*, 309 U.S. 78, 80, 60 S.Ct. 424, 84

L.Ed. 585 (1940); *accord United States v. Powell*, 307 F.2d 821, 824 (10th Cir.1962); *Estate of Vissering v. Commissioner*, 990 F.2d 578, 580 (10th Cir.1993). Because the Berryman Trust was executed and carried out in Kansas for the benefit of Kansas citizens, the court must apply Kansas law in determining whether the language of the trust created a general power of appointment in Decedent.

### III. Discussion

At the heart of this case is paragraph 2(c)(b) of the Berryman Trust:

> The TRUSTEE shall pay to my husband from time to time such amounts of the principal of The Marital Trust as the TRUSTEE may in its discretion deem advisable for his happiness, health, support, and maintenance.

The IRS determined that the use of the word "happiness" in this paragraph created a general power of appointment in Decedent not limited by an ascertainable standard relating to Decedent's health, education, support, or maintenance, and thus not falling under the 26 U.S.C. § 2041(b)(1)(A) exception. The IRS noted that the Treasury Regulation expounding upon this exception states: "a power to use property for the ... happiness, of the holder is not limited by the requisite standard." 26 C.F.R. § 20.2041-1(c)(2). In challenging this IRS determination, plaintiffs argue that, under Kansas law, Decedent's power to consume the corpus of the trust was limited by an ascertainable standard, thereby removing the trust corpus from the reach of 26 U.S.C. § 2041. Plaintiffs ground their argument in both the language of the trust itself and in the fiduciary duty imposed by Kansas law upon trustees. Addressing each basis separately below, the court finds that

1. Plaintiffs have moved for summary judgment. The government has not filed a separate motion for summary judgment, but asks the court to grant it summary judgment in its brief replying to plaintiffs' motion. Although the court does not consider the government's request made in this manner as a separate motion for summary judgment, the court may grant summary judgment for the government sua sponte. *See David v. City & County of Denver*, 101 F.3d 1344, 1359 (10th Cir.1996), citing *Celotex*, 477 U.S. at 326, 106 S.Ct. 2548.

plaintiffs' argument that an ascertainable standard exists must fail. Because no ascertainable standard exists, the court finds as a matter of law that Decedent had a general power of appointment under 26 U.S.C. § 2041. The court, therefore, grants summary judgment in favor of the government.

## A. An Ascertainable Standard Created by the Trust Language

■ Relying on the four-corners of the trust, plaintiffs assert that Decedent's power to invade the trust corpus was limited to an ascertainable standard, such that the 26 U.S.C. § 2041(b)(1)(A) exception applies to deem Decedent lacking in a general power of appointment. Plaintiffs rely primarily on the Tenth Circuit case of *United States v. Powell*, 307 F.2d 821 (10th Cir.1962), which applied Kansas Law in its analysis of the use of "happiness" in a trust. In *Powell*, the trust instrument at issue provided:

> If, at any time during the continuance of this trust, it is necessary or advisable to use some portion of the principal for the maintenance, welfare, comfort or happiness of the [beneficiaries], the Trustee is hereby authorized and empowered to use so much of the principal as in the discretion of the Trustee is necessary or advisable to be used ... provided that the Trustee shall deem that the purpose for which the payments are to be made, justifies the reduction in the principal of the trust.

307 F.2d at 823. In analyzing the trustee's power to invade the corpus, the court stated:

> There is nothing in the context in which the term "happiness" is found, or in the instrument as a whole, that indicates an intent that it should be given a broader connotation than its usual and ordinary meaning. Rather, the contrary is indicated by the qualifying language that resort to principal should not be made, unless the need 'justifies the reduction in the' corpus.

*Id.* at 826. The court then noted that the usual and ordinary meaning of "happiness"

is a state of well-being, "synonymous with 'comfort' or 'welfare.'" *Id.* Finally, the court distinguished the Supreme Court case of *Merchants Nat. Bank v. Commissioner*, 320 U.S. 256, 263, 64 S.Ct. 108, 88 L.Ed. 35 (1943), which held that a trust instrument authorizing the trustee to liberally exercise its discretion and invade the principal of the trust for the beneficiary's "happiness" was not restrictive enough to create an ascertainable standard based on the beneficiary's prior way of life. The Tenth Circuit distinguished *Merchants Nat. Bank* on the ground that the trust involved in *Powell* "not only did not provide that the power to invade the corpus should be exercised with liberality and to gratify the wishes of the beneficiaries, but, on the contrary, indicated that the power should be exercised with restraint and only when the purpose justified a reduction of the corpus." *Powell*, 307 F.2d at 828.

The parties reach significantly different conclusions as to the *Powell* holding and its application to the present case. Plaintiffs argue that so long as the meaning of "happiness" is not broadened by ancillary language in the trust, the trust may be found to have an ascertainable standard. Nothing in the Berryman Trust broadened the meaning of "happiness," and thus, according to plaintiffs, the court must find that the trust created an ascertainable standard. The government argues that only when "happiness" is restricted by ancillary language in the trust may the trust be found to have an ascertainable standard. Nothing in the Berryman Trust restricts the meaning of "happiness," and thus, according to the government, the court must find that the trust created a general power of appointment. The court concurs with the government and finds that *Powell* requires trust language limiting the meaning of "happiness" in order for an ascertainable standard to be found.

To begin with, as even plaintiffs recognize in their brief, "[t]he court in *Powell* also relied on the fact that the trust actual-

ly conveyed an intent to narrow the meaning of 'happiness' as evidenced by the qualifying language requiring the trustee to determine that the purpose for the invasion justified the reduction in principal." Pl.Memo. in Support of Motion for S.J. at 11–12. Both in analyzing the language of the trust and in distinguishing *Merchants Nat. Bank*, the Tenth Circuit relied upon trust language stating that the trustee should not invade the trust principal unless "the Trustee shall deem that the purpose for which the payments are to be made, justifies the reduction." Subsequent cases citing *Powell* also note the Tenth Circuit's reliance upon this qualifying language. *See United States v. Commercial Nat. Bank*, 404 F.2d 927, 933 (10th Cir.1968) (noting that *Powell* distinguished *Merchants Nat. Bank* in part based on the limited power of invasion given the trustee in *Powell*); *Estate of Harris v. Commissioner of Internal Revenue*, No. 3361–62, 1964 WL 907 (1964) (finding that "happiness" introduces an unascertainable standard and, in distinguishing *Powell*, noting that the *Powell* court "relied in part at least upon indications in the trust instrument that the power to invade 'should be exercised with restraint and only when the purpose justified a reduction of the corpus' "); *Estate of Cutter v. Commissioner*, 62 T.C. 351, 358 n. 8, 1974 WL 2632 (1974) ("The Tenth Circuit in *Powell* looked to the four corners of the trust instrument to determine the meaning of the word 'happiness.' The trust instrument indicated, said the court, that the power of the settlor-trustee to invade corpus for 'happiness' should be exercised with restraint.").

The court further notes that the Tenth Circuit substantially quoted the trial court's findings of fact and may have been influenced by the trial court's conclusion that "as used by Mr. Powell the word 'happiness' ... was intended to and must be equated with basic maintenance and welfare, not with 'pleasure' or subjective 'delight'." *Powell*, 307 F.2d at 823. The trial court heard testimony from five witnesses who testified that Mr. Powell was extremely frugal and thrifty. The trial

court then found that the thought of making distributions to the beneficiaries of the trust for their " 'happiness'—as distinguished from distributions necessary to maintain them according to the conservative standard of living to which they had been accustomed—would have been repugnant." *Id.* The cardinal rule, in effect long before *Powell* was decided, is that the intention of the settler must control and, where construction of the trust is necessary, the court must put itself in the situation of the settler to determine that intent. *See Dyal v. Brunt*, 155 Kan. 141, 123 P.2d 307 (Kan.1942); *Calkin v. Wallace*, 160 Kan. 760, 165 P.2d 224 (1946); *Estate of Pickrell*, 248 Kan. 247, 806 P.2d 1007, 1012–1013 (1991). Although when stating its holding the *Powell* court did not specifically refer to the trial court's findings of Mr. Powell's intent, one can assume that the Tenth Circuit followed Kansas law and considered Mr. Powell's limited use of the term "happiness." This consideration adds to the court's belief that the *Powell* holding requires that a trust allowing invasion of the corpus for the beneficiary's "happiness" must also contain limiting language before an ascertainable standard may be found.

Plaintiffs argue that the Berryman Trust does have limiting language demonstrating Mrs. Berryman's intent to restrict invasion of the trust corpus by Decedent. First, plaintiffs note that in the same sentence as "happiness" is the requirement that the trustee "deem advisable" any payment from the trust principal. The court does not find this language to be limiting to the extent required by *Powell*. In fact, the trust in *Powell* only allowed invasion of the corpus if the trustee found it "necessary or advisable," but the Tenth Circuit never focused on this language. Rather, the court repeatedly relied on the trust language which required the trustee to deem that the purpose of invasion "justifies the reduction in the principal of the trust" as limiting language. The Berryman Trust has no similar language limiting invasion by imposing an additional hurdle

upon the consumption of the trust principal. Moreover, the only Tenth Circuit case since *Powell* to find that modifying language removed a trust from "an unlimited power of invasion" based its decision on language more restrictive than "deems advisable." In *Estate of Vissering v. Commissioner*, 990 F.2d 578, 581 (10th Cir. 1993), the court noted that the trust "language states that invasion of principal is permitted to the extent 'required for the continued comfort' of the decedent." Citing *Powell*, the court found that the words "required" and "continued" limited the word "comfort"[2] to an ascertainable standard. *Id.* In doing so, the court distinguished less limiting terms, stating, "[i]nvasion of the corpus is not permitted.to the extent 'determined' or 'desired' ... but only to the extent that it is 'required.'" *Id.* Like the terms "determined" or "desired," the term "advisable," as used in the Berryman Trust, does not fall at the same level of restriction as the term "required." "Required" allows invasion of the corpus only if "necessary or essential," Webster's New Collegiate Dictionary, 1002 (9th ed.1991), while "advisable" allows invasion if "prudent," *id.* at 59. The *Vissering* court also found that the word "continued" limited invasion to an ascertainable standard based on the decedent's accustomed manner of living. The Berryman Trust has no such language implying that Decedent could have only consumed the trust corpus to the extent necessary to maintain his accustomed standard of living.

Second, plaintiffs argue that "happiness" has a limited meaning when read together with the string of words following it: "happiness, health, support, and maintenance." To support this proposition, plaintiffs cite *Estate of Ford v. Commissioner*, 53 T.C. 114, 126, 1969 WL 1564 (1969), which analyzed a trust with language allowing the trustee to invade the principle if the beneficiary "shall be in *need* of funds ... for his support, maintenance, education, welfare, and happiness." (Emphasis added). Plaintiffs correctly state the tax court's ruling that " 'happiness,' must be construed in the context in which it appears," but plaintiffs fail to consider the court's next sentence: "Viewing the invasion provision in its entirety, we conclude that its emphasis on 'need' delimits 'happiness'...." *Id.* The court found that "happiness" was limited by the word "need," not by the string of words accompanying it. Therefore, *Ford* does not support plaintiffs argument. Moreover, as discussed above, the Berryman Trust lacked a strong limiting word, such as "need" or the synonymous word "required." The court also notes that other courts have rejected the argument that plaintiffs now make. In *Doyle v. United States*, 358 F.Supp. 300, 307 (E.D.Pa.1973) the trust authorized invasion for the beneficiary's "comfort, maintenance and support." In finding that no ascertainable standard existed, the court stated: "we are faced with the use of the word 'comfort' standing juxtaposed to words that are clearly limited by an ascertainable standard—'maintenance and support['] ... [s]o, at least structurally, the word 'comfort' relates to the words 'maintenance and support.' But contrary to plaintiff's contention, this structural positioning of words is not determinative." Finally, plaintiffs assert that "common sense" dictates that "happiness, health, support, and maintenance" be read together and that together they show Mrs. Berryman's intent to limit the power of the trustee to invade the trust. "To find otherwise would render the words 'health,' 'support,' and 'maintenance' meaningless." Pl.Memo. in Support of Motion for S.J. at 13. The court disagrees and finds that Mrs. Berryman's use of the word "happiness" was to express an object for which the principal could be invaded in addition to the objects of "health, support, and maintenance." To find otherwise would render the word "happiness" meaningless.

Plaintiffs third argument that limiting language exists within the four-corners of

---

2. "Comfort" is synonymous with "happiness." *Powell*, 307 F.2d at 826.

the trust is that Mrs. Berryman included language displaying an intent to preserve the trust principal for her daughters.[3] The court does not agree that the naming of residuary beneficiaries placed a limit on Decedent's power to invade the corpus for his own "happiness." There is nothing in the trust that indicates an intent by Mrs. Berryman that her daughters be given priority over the happiness of her husband. Furthermore, nearly all trusts list residuary beneficiaries. Under plaintiffs' logic, even a trust granting very broad powers to a trustee to invade the corpus, such as that in *Merchants Nat. Bank* discussed above, would be deemed not to grant the trustee a general power of appointment if the trust named residuary beneficiaries.[4] As one can see by the *Merchants Nat. Bank* holding that no ascertainable standard existed, plaintiffs' logic is clearly flawed.

Fourth, plaintiffs assert that the existence of a spendthrift clause in the Berryman Trust limited Decedent's powers of invasion to an ascertainable standard. The spendthrift clause in paragraph 8 of the Berryman Trust states:

> No interest of any beneficiary ... shall be subject to pledge, assignment, sale, or transfer in any manner, nor shall any beneficiary have the power in any manner to anticipate, charge, or encumber his interest, either in income or principal, nor shall such interest of any beneficiary be liable for (sic) subject in any manner for the debts, contracts, liabilities, engagements, or torts of such beneficiary.

Plaintiffs note that the Supreme Court of Kansas has concluded that spendthrift clauses "are wholly inconsistent with the concept that the beneficiaries are to have any control at all over the management of the trust estate... [T]he whole idea of a spendthrift trust is to substitute the judgment of the trustee for that of the beneficiary." *Jennings v. Murdock,* 220 Kan.

182, 553 P.2d 846, 868 (1976). The court does not dispute this statement of the purpose of spendthrift clauses, but fails to see its applicability to cases in which the trustee is also a beneficiary. Here, Decedent was both a beneficiary and the sole trustee of the trust. As the trustee, Decedent had a duty to manage the trust estate, despite the fact that the trust's spendthrift clause is "wholly inconsistent with the concept that the beneficiaries are to have any control at all over the management of the trust estate." *Id.* Although the spendthrift clause would have prohibited Decedent from, for example, using the principal as collateral on a loan, it did not limit Decedent's power as a trustee to spend money from the corpus for his happiness as a beneficiary. The court finds nothing in the trust which limits Decedent's power to invade the corpus to an ascertainable standard.

### B. An Ascertainable Standard Arising From a Trustee's Fiduciary Duties

■ In addition to arguing that limiting language is found in the trust itself, Plaintiffs argue that the fiduciary duties placed on trustees by Kansas law restricted Decedent's power to consume the trust corpus to an ascertainable standard, thereby removing the corpus from the reach of 26 U.S.C. § 2041. Plaintiffs correctly state the law in Kansas: trustees owe a fiduciary duty to all beneficiaries not to mismanage or abuse the terms of the trust. *See* K.S.A. § 58–1203; *Mark Twain Kansas City Bank v. Kroh Bros. Dev. Co.,* 250 Kan. 754, 829 P.2d 907 (1992); *In re Porter's Estate,* 164 Kan. 92, 187 P.2d 520 (1947). The court, however, does not agree that this law would lead the Kansas Supreme Court to conclude that a fiduciary duty in and of itself creates an ascertainable standard which limits the degree to which the trust corpus could be invaded.[5] In order for a trustee to breach his

---

**3.** Plaintiffs cite the Massachusetts case of *Dana v. Gring,* 374 Mass. 109, 371 N.E.2d 755 (1977), in support of their argument. The court is not bound by or persuaded by *Dana.*

**4.** The trust in *Merchants Nat. Bank* named certain charities as residuary beneficiaries.

**5.** Kansas courts have not addressed this issue.

**1142**

fiduciary duty, he must violate the terms or the spirit of the trust. The question that the court addresses in this case is what power the trust actually gave Decedent. The court determined above that the trust itself gave Decedent the power to invade the principal of the trust to the extent that he deemed advisable for his happiness, health, support, and maintenance. Decedent thus had the power to distribute the principal to himself for these purposes without breaching a duty to the remainder beneficiaries. Moreover, the "search of § 2041 is the breadth of power given a decedent. When that is determined, the tax consequences follow.... That [the beneficiary] was sole trustee ... does not affect the taxability of whatever power she had to appropriate property to herself." *Strite v. McGinnes,* 330 F.2d 234, 240 (3d Cir.1964). Under this standard, it is enough that the trust instrument itself created an unascertainable standard, giving Decedent a general power of appointment. The court finds that Decedent's role as a trustee does not alter the tax liabilities created by paragraph 2(c)(b) of the Berryman Trust. Because no ascertainable standard is created either by the trust language itself or by Kansas law, the court finds that Decedent had a general power of appointment in the trust subject to taxation under 26 U.S.C. § 2041.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' motion for summary judgment is denied.

**IT IS FURTHER ORDERED THAT** summary judgment is granted in favor of the government.

**IT IS SO ORDERED.**